# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Estate of Blickenstaff*, 2012 IL App (4th) 120480

---

| | |
|---|---|
| Appellate Court Caption | In re: the Estate of WYVERNE BLICKENSTAFF, Deceased, SCOTT E. BLICKENSTAFF, and KIM D. BLICKENSTAFF, Petitioners-Appellees, and TODD A. BLICKENSTAFF, Petitioner, v. JON M. BLICKENSTAFF, as Executor of the Estate of WYVERNE BLICKENSTAFF; and WILLIAM R. KOHLHASE, Respondents-Appellants. |
| District & No. | Fourth District<br>Docket No. 4-12-0480 |
| Filed | December 18, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a dispute arising from petitioners' challenge of their father's will and their attempt to remove their brother from his position as executor, the portion of the trial court's order requiring the executor to turn over the billing statements related to attorney fees he paid from estate assets without court approval was upheld, but the portion of the order requiring the executor to turn over his personal financial documents was reversed, since those documents were not relevant to any issues in the case. |
| Decision Under Review | Appeal from the Circuit Court of Woodford County, No. 06-P-26; the Hon. Charles M. Feeney, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed in part and reversed in part. |
| Counsel on Appeal | William R. Kohlhase (argued), of Miller, Hall & Triggs, of Peoria, for appellants. |
| | Jeffrey Alan Ryva (argued), of Husch Blackwell LLP, of Peoria, and Dean R. Essig, of Washington, for appellees. |
| Panel | JUSTICE APPLETON delivered the judgment of the court, with opinion. |
| | Presiding Justice Steigmann and Justice Turner concurred in the judgment and opinion. |

**OPINION**

¶ 1    Petitioners, Scott E. Blickenstaff and Kim D. Blickenstaff, are challenging the will of their deceased father, Wyverne A. Blickenstaff. They also have petitioned the trial court to remove their brother, Jon M. Blickenstaff, from the position of executor. During pretrial discovery in this litigation, petitioners requested the executor's personal financial documents as well as the billing statements corresponding to attorney fees he paid, without prior court approval, from the assets of the estate. The executor refused these requests. Later, the executor and his attorney, William R. Kohlhase, refused to comply with a court order to turn over the documents in question. They adhered to their position that, under the law, the documents were exempt from discovery. Consequently, the court found them to be in contempt of court and fined them $100. Respondents, the executor and Kohlhase, appeal.

¶ 2    We find an abuse of discretion in requiring the executor to turn over his personal financial documents (*e.g.*, his individual tax returns, private bank statements, and cancelled checks), because we do not see how those documents are relevant to the issues framed by the pleadings; nor do we see how those documents could reasonably be expected to lead to admissible evidence. We agree, however, that respondents should have to produce the unredacted billing statements corresponding to the attorney fees paid with estate assets. By paying the attorney fees out of the estate, the executor voluntarily injected into this case the issue of whether these attorney fees were reasonable and were for services beneficial to the estate. Production of the unredacted billing statements is necessary to the fair and truthful resolution of that issue, and insomuch as the billing statements come within the attorney-client privilege, that privilege is impliedly waived. Therefore, we affirm the trial court's judgment in part and reverse it in part.

## I. BACKGROUND

### A. Wyverne A. Blickenstaff's Surviving Offspring

¶ 5 Wyverne A. Blickenstaff (decedent) died in January 2006. A daughter and four sons survived him: Gaylene J. Evans, Todd A. Blickenstaff, the two petitioners, and the executor.

### B. The Decedent's Will

¶ 7 The decedent left a will, dated October 21, 2004. In his will, the decedent named Jon M. Blickenstaff to be the executor and also bequeathed to him, individually, enough stock in Blickenstaff Farming Corporation to make him the owner of 67% of the voting shares. The decedent bequeathed the remaining shares and the residue of his estate equally to all five children.

¶ 8 In March 2006, the trial court admitted the will to probate and, in accordance with the will, appointed Jon M. Blickenstaff as executor.

### C. The Petition Contesting the Will

¶ 10 In September 2006, petitioners as well as Todd A. Blickenstaff filed a petition contesting the will. The petition alleged, on information and belief, that the decedent had lacked the requisite mental capacity to make the will and that Jon M. Blickenstaff had exerted undue influence over him.

### D. The Subpoena *Duces Tecum*

¶ 12 In March 2010, petitioners obtained the issuance of a subpoena *duces tecum*, which they caused to be served on the executor, Jon M. Blickenstaff. The subpoena sought documents "pertaining to the Estate of Wyverne A. Blickenstaff," including the following:

"3. Copies of all checks, bank statements, records of accounts, bills paid and bills due from the opening of the Estate to date.

4. All records relating to the Blickenstaff Farm [*sic*] Corporation including checks, receipts, bank statements, paid bills and any other financial information."

¶ 13 In April 2010, the executor moved to quash this subpoena. He offered two reasons for quashing the subpoena: (1) discovery in the will contest had closed; and (2) the documentation that the subpoena sought was irrelevant to the issue of whether the will was valid–which, at the time, was the only issue framed by the pleadings.

¶ 14 Petitioners explained, however, that, instead of seeking the documentation for purposes of the will contest, they were merely exercising their statutory right to inspect the books of account of the decedent. See 755 ILCS 5/19-3 (West 2010).

¶ 15 In May 2010, the trial court denied the executor's motion to quash the subpoena *duces tecum*.

**¶ 16**    E. The Petition To Remove Jon M. Blickenstaff From the Executorship

**¶ 17**    In May 2011, petitioners filed a petition to remove Jon M. Blickenstaff from the position of executor of the decedent's will. In their petition, they allege essentially four grounds for removal.

**¶ 18**    *1. As Executor, Using the Estate's Majority Ownership*
*of the Corporation To Cast Votes, and Make Decisions,*
*Unfairly Beneficial to Himself Personally*

**¶ 19**    a. Compensation for the President and the Other Director

**¶ 20**    Although article III of the will bequeaths enough shares to Jon M. Blickenstaff to give him the majority vote, the will is contested, and those shares have not yet been distributed to him. Therefore, petitioners allege the estate still has majority ownership of the corporation.

**¶ 21**    According to petitioners, Jon M. Blickenstaff, as executor, used the majority voting power of the estate to reduce the corporation's board of directors from three members to two members, electing himself and their sister, Gaylene J. Evans, as the two board members. In addition to being one of the two board members, Jon M. Blickenstaff is the president of the corporation, a position he has held for several years. Previously, the president and the board members were uncompensated because the farmland was rented out to a tenant farmer, Ron Hastings, who did all the farming work and made all the farming decisions. After the reduction of the board of directors, however, from three members to two members and after the election of Gaylene J. Evans and Jon M. Blickenstaff to those two director positions, they, as directors, voted to pay Jon M. Blickenstaff a salary of $39,600 and a bonus of $12,000 for his services as president–55% of the net income of the corporation for 2010–even though total revenue for the corporation declined 9% from 2009 to 2010. The two directors further resolved that the president's salary would increase in 2011 to $40,800.

**¶ 22**    In addition, Jon M. Blickenstaff and Gaylene J. Evans, as directors, voted to pay Gaylene J. Evans a director's fee of $5,000. Petitioners regard this fee as excessive relative to the minimal work a director has to do, just as they regard the president's compensation as excessive.

**¶ 23**    b. Failure To Pay Dividends

**¶ 24**    Petitioners complain that the executor/director, Jon M. Blickenstaff, has not authorized any payment of dividends during this litigation even though the corporation has almost $600,000 in liquid assets. They suggest that this continued accumulation of earnings further highlights the executor's conflict of interest: refraining from paying dividends serves his own personal interest rather than that of all five children.

**¶ 25**    *2. Buying a New Machine Shed and a Skid-Steer*
*Even Though Equipment Is Solely the Tenant's Responsibility*

**¶ 26**    Petitioners allege that the executor has used estate assets to pay $145,620 for a new

machine shed and $36,000 for a skid-steer. According to petitioners, these purchases are a waste of the estate because equipment is solely the tenant farmer's responsibility and, indeed, a primary purpose of renting out the land is to avoid having to buy equipment.

¶ 27          3. *Payment of Attorney Fees With Estate Assets, Without Court Approval*

¶ 28     Petitioners allege that, as of December 31, 2009, the executor has spent over $115,000 in estate funds to pay attorney fees in the will contest without ever seeking the trial court's approval of this expenditure.

¶ 29          4. *Failure To File a Claim Against Donna Wernsman*

¶ 30     Petitioners also fault the executor for failing to file a claim against Donna Wernsman. According to petitioners, Wernsman was the hairdresser of the decedent's wife, and she was not related to the decedent, either by blood or marriage. While Wernsman was in her late 30s or early 40s and the decedent was in his mid-80s, Wernsman persuaded him repeatedly to give her large gifts of money. Petitioners allege that these gifts, totaling $143,700, were tantamount to the financial exploitation of an elderly person, even though Wernsman has denied any wrongdoing.

¶ 31     Petitioners also are concerned about the adverse tax consequences the estate might face because of these gifts to Wernsman. They criticize the executor for failing to defuse a potential dispute with the Internal Revenue Service.

¶ 32          F. Petitioners' Motion for a Temporary Restraining Order

¶ 33     In September 2011, petitioners filed a motion for a temporary restraining order, seeking to "preserve the status quo pending the evidentiary hearing on the Petition to Remove [Jon M. Blickenstaff] as Executor." Petitioners were concerned that he "[might] be using or [would] try to use estate or corporate funds to pay his lawyers to defend him in the Petition to Remove proceeding," as he already, without court approval, had spent over $115,000 in estate assets on attorney fees in the will contest. Petitioners also were concerned that, in his capacity as a director of the corporation, the executor would make further imprudent expenditures of corporate assets. Therefore, petitioners requested the trial court to "place a freeze upon all Estate and corporate accounts pending further order of court, in connection with the payment of any attorneys' fees for defense of either petition, the Will contest or the Petition to Remove." Alternatively, petitioners requested an order that, "before any payment of attorneys' fees occurs regarding either aspect of this matter[,] *** approval be sought by proper petition to the Court."

¶ 34     This petition for a temporary restraining order remains pending after being continued by agreement of the parties.

¶ 35          G. "First Request To Produce Regarding Petition To Remove Executor"

¶ 36     At some point in time, petitioners served upon the executor a discovery request entitled "First Request To Produce Regarding Petition To Remove Executor," which we will call, for

short, "the request for production." In this request for production, petitioners sought five categories of documents:

"1. Copies of Jon Blickenstaff's personal Federal Income Tax return forms 1040 and W-2's for the last three years filed.

2. Copies of Jon Blickenstaff's personal State of Illinois Income Tax return forms IL-1040 for the last three years filed.

3. In regard to personal bank accounts, money market accounts, savings accounts and any investment accounts in the name of Jon Blickenstaff:

(a) Copies of any bank statements or memorandums received on any personal account within the last twelve months from this date; and

(b) All cancelled checks and records of withdrawals from any bank account of Jon Blickenstaff within the last twelve months.

4. Copies of all statements of legal services from Miller, Hall & Triggs, LLC related to services provided in regard to the Petition to Remove Executor either billed to the Estate of Wyverne Blickenstaff or to Jon Blickenstaff personally.

5. All evidence of payment on these statements, including copies of cancelled checks and bank statements reflecting payments on bills whether paid by Jon Blickenstaff personally or as Executor of the Estate of Wyverne Blickenstaff."

¶ 37    The executor objected to paragraphs 1, 2, and 3 of the request for production on the ground that these paragraphs "[sought] documents which [were] not relevant to the claim or defense of any party and [the demands in these paragraphs were] no more than an effort to harass [him] and invade his privacy." He objected to paragraph 4 on the ground that "it [sought] documents which [were] not relevant to the claim or defense of any party and [it was] an improper attempt by Petitioners to discover privileged information from their opponent in a claim currently being litigated." He objected to paragraph 5 on the ground that "it [sought] documents that [were] not relevant to the claim or defense of any party."


¶ 38                           H. Petitioners' Motion To Compel

¶ 39    In December 2011, petitioners filed a motion to compel the executor to comply with the subpoena *duces tecum* and with all five paragraphs of their request for production.

¶ 40    In his memorandum in opposition to the motion to compel, the executor argued that the subpoena *duces tecum* was issued on March 31, 2010, "roughly fourteen months following the close of discovery in the will contest" and that it was "not issued in connection with any pleading pending before [the trial] [c]ourt" at that time (it was not until May 3, 2011, that petitioners filed their petition to remove him from the executorship).

¶ 41    As for the request for production, the executor argued it was "simply an effort to invade [his] privacy and the attorney/client privilege." He insisted: "There is not a single issue raised in the Petition to Remove which renders Jon M. Blickenstaff's personal tax returns or financial records relevant." As for the request for attorney fee bills, he objected: "That raises obvious attorney/client privilege issues *** to the extent that the [billing records], as they inevitably do, disclose confidential attorney/client communications."

¶ 42    In February 2012, the trial court overruled the executor's objections to the subpoena *duces tecum* and the request for production, ordering him to comply with both documents and ordering Kohlhase to turn over the billing statements.

¶ 43                    I. The Contempt Proceeding

¶ 44    When the executor did not produce the attorney bills and financial documents that the subpoena *duces tecum* and request for production described, petitioners filed a petition for a rule to show cause. In April 2012, after a hearing, the trial court found that the executor and his attorney, Kohlhase, had failed to show cause why they should not be held to be in contempt of court. Hence, the court found them "to be in contempt of [the] Court's February 17, 2012 Order in that they ha[d] not produced the personal financial records of Jon Blickenstaff and all of the attorney's fees billing documents from the various law firms involved in this matter as ordered by the Court." The court sanctioned respondents in the amount of $100.

¶ 45    This appeal followed.

¶ 46                          II. ANALYSIS
¶ 47            A. The Executor's Personal Financial Documents

¶ 48    Under the subheading "Scope of Discovery," Illinois Supreme Court Rule 201(b)(1) (eff. July 1, 2002) provides that, unless some other provision of the supreme court rules says otherwise, "a party may obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking disclosure or of any other party." Relevant information, for purposes of Rule 201(b)(1), is either "that which is admissible at trial" or "that which leads to admissible evidence." *Manns v. Briell*, 349 Ill. App. 3d 358, 361 (2004). "[T]he right to discovery is limited to disclosure of matters that will be relevant to the case at hand in order to protect against abuses and unfairness, and a court should deny a discovery request where there is insufficient evidence that the requested discovery is relevant or will lead to such evidence." (Internal quotation marks omitted.) *Youle v. Ryan*, 349 Ill. App. 3d 377, 380-81 (2004).

¶ 49    The executor argues that, in their request for production, petitioners exceed the permissible scope of discovery, because his personal financial documents have nothing to do with any of the issues in this case. In their request for production, petitioners seek the executor's personal tax returns from the previous 3 years as well all documentation, from the previous 12 months, pertaining to his personal bank accounts and investment accounts, including but not limited to bank statements, withdrawal slips, and canceled checks.

¶ 50    Petitioners argue, on the other hand, that this personal financial documentation is relevant because they allege that the executor has wasted assets of the estate by casting a vote, as one of the two directors of the corporation, to pay himself a salary of $39,600 and a bonus of $12,000 for his services as president of the corporation. They reason that the amount he is paid in his other job, a full-time job, would be relevant to this issue of waste in that it would tend to show the true fair-market value of his services as president of the corporation. Also,

petitioners argue, the more hours the executor spent in performing his full-time job, the less time he would have left over to perform the job of president and therefore the less deserving he would be of a salary and a bonus in those amounts.

¶ 51    Before addressing these arguments by petitioners, we should acknowledge that, insomuch as reasonable minds could differ on the merits of these arguments, we should defer to the trial court. "A trial court is given great latitude in determining the scope of discovery, and discovery orders will not be disturbed absent an abuse of discretion." *Manns*, 349 Ill. App. 3d at 361. A decision is an abuse of discretion only if it is "clearly against logic." (Internal quotation marks omitted.) *People v. Covington*, 395 Ill. App. 3d 996, 1002-03 (2009). Given the issues in this case, we are unable to see any logic in requiring the executor to produce all his personal financial documents. What the executor earns in his full-time job would be relevant to establishing the fair-market value of his services as president of the corporation only if, in his full-time job, he did the same kind of work that he did as president of the corporation. Petitioners have cited no evidence of such an equivalency between the two positions. In any event, to find out what the executor earns in his full-time job, petitioners do not need all his personal financial documents, including his canceled checks. Nor do petitioners need all his personal financial documents to learn how many hours he worked outside his position as president of the corporation.

¶ 52    Petitioners argue, alternatively, that the executor's personal financial documents are fair game in discovery because he has put his income in issue. Citing our decision in *Freehill v. DeWitt County Service Co.*, 125 Ill. App. 2d 306, 320-21 (1970), petitioners maintain that "when a litigant has put in issue his income, the privilege from discovery of income tax returns is waived; those returns are subject to discovery and available for impeachment of other evidence." *Freehill* is distinguishable, however, because the plaintiff in that case filed an action for wrongful death, thereby putting the decedent's probable future earnings in issue. *Id.* at 320-21. In an action for wrongful death, the next of kin can recover the pecuniary contributions the decedent probably would have made in the future, discounted to present value, and the decedent's past earnings are an important consideration when projecting the decedent's probable future earnings. See *Keel v. Compton*, 120 Ill. App. 2d 248, 254-55 (1970); 16 Ill. L. and Prac. *Death* § 88, at 96-97 (2004). We held: "Where a litigant has put in issue his income, the privilege from discovery of his income tax returns is waived." *Freehill*, 125 Ill. App. 2d at 321. In the present case, by contrast, the executor has filed no pleading putting his income in issue. Rather, petitioners have filed a pleading putting only part of his income in issue: his income as president of the corporation. So, we are unconvinced by the citation of *Freehill*.

¶ 53    In short, we do not see how petitioners' sweeping request for all of the executor's personal financial documents, including, for example, the canceled checks he might have written to a grocery store or barbershop, was reasonably calculated to lead to the discovery of admissible evidence. Therefore, we conclude that the trial court abused its discretion by overruling the relevancy objections to paragraphs 1, 2, and 3 of the request for production.

¶ 54          B. The Billing Statements From the Executor's Attorneys

¶ 55    Respondents (the executor and Kohlhase) argue that because the executor has admitted using estate assets to pay attorneys to defend him against the petition for removal and because he has provided petitioners "all payment documentation, including checks, of payment by the Estate of the attorneys defending [against] the Petition to Remove, [petitioners] have all the information they need to take any position or make any argument regarding payment of such fees." Respondents insist "[i]t is unnecessary for [petitioners] to see the actual bills detailing services provided by [the executor's] attorneys while the parties are still litigating the Petition to Remove," for disclosure of those bills, with their detailed descriptions of the attorney's services, would violate the attorney-client privilege. See *People ex rel. Ulrich v. Stukel*, 294 Ill. App. 3d 193, 201 (1997).

¶ 56    If, as respondents contend, it is unnecessary for petitioners to see the billing statements and if it is enough for them to know merely the amount of attorney fees paid out of the estate, why were the billing statements generated in the first place? Why do law firms send billing statements to their clients, detailing the services provided, instead of just sending their clients a piece of paper saying simply, "Amount Due: X dollars?" The reason is obvious. The descriptions of the specific services the attorney provided, along with the amount of time the attorney spent on each service, are the explanation and justification for the fee charged. See Ill. R. Prof. Conduct R. 1.5 (eff. Jan. 1, 2010).

¶ 57    Such a justification is relevant to the petitioners and the trial court because the executor should not have paid any attorney fees whatsoever out of the estate without first obtaining the trial court's approval for each such payment–regardless of whether the attorney fees were for defending against petitioners' challenge of the will or defending against their petition to remove him from the executorship. The executor and his attorneys were on notice, from case law, that court approval was required before the payment of any attorney fees out of the estate. See *In re Estate of Thomson*, 139 Ill. App. 3d 930, 939 (1986); *In re Estate of Devoy*, 231 Ill. App. 3d 883, 888 (1992); *Sanni, Inc. v. Fiocchi*, 111 Ill. App. 3d 234, 236 (1982). Insomuch as the trial court finds these attorney fees to be unreasonable or not beneficial to the estate, the executor and possibly his attorneys, too, will have to reimburse the estate. See *People ex rel. Chicago Bar Ass'n v. Templeman*, 363 Ill. 152, 157 (1936); *In re Estate of Minsky*, 59 Ill. App. 3d 974, 980 (1978). Thus, petitioners and the court need the billing statements for the same reason a client would need them: to confirm the reasonableness of the amount of attorney fees charged. See *Ideal Electronic Security Co. v. International Fidelity Insurance Co.*, 129 F.3d 143, 152 (D.C. Cir. 1997) ("Although the reasonableness of the [attorney] fee award is ultimately within the District Court's discretion, [the indemnitor] must first be allowed an opportunity to challenge the reasonableness of the fees following full disclosure of the billing statements.").

¶ 58    It might well be, as respondents argue, that the billing statements come within the attorney-client privilege (see *Stukel*, 294 Ill. App. 3d at 201), but in our *de novo* review of this issue (see *Mueller Industries, Inc. v. Berkman*, 399 Ill. App. 3d 456, 463 (2010)), we hold that the executor has impliedly waived the attorney-client privilege with respect to billing statements he paid with funds from the estate. A party impliedly waives the attorney-client privilege by "voluntarily inject[ing] either a factual or legal issue into the case, the

truthful resolution of which requires an examination of the confidential communications." (Internal quotation marks omitted.) *Fox Moraine, LLC v. United City of Yorkville*, 2011 IL App (2d) 100017, ¶ 65. By paying the attorney fees out of the estate, the executor voluntarily injected into this case the issue of whether the attorney fees were reasonable and whether they were for services beneficial to the estate. See *Minsky*, 59 Ill. App. 3d at 980. Fair and truthful resolution of that issue necessitates the production of the unredacted billing statements. See *Ideal*, 129 F.3d at 152.

¶ 59                                III. CONCLUSION

¶ 60      We are concerned that the demonstrated ongoing internecine family warfare in this case shows no sign of abating. We encourage the trial court to impose upon counsel, for both sides, specific deadlines within which to resolve the outstanding issues in the administration of this estate and to close the estate with all deliberate speed.

¶ 61      For the foregoing reasons, we affirm the trial court's judgment in part and reverse it in part: we affirm the punishment for contempt with respect to the refusal to produce the attorney billing statements paid with estate assets, but we otherwise reverse the judgment.

¶ 62      Affirmed in part and reversed in part.