2017 IL App (4th) 170173
NO. 4-17-0173

FILED
December 5, 2017
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| LARRY SALVATOR, SR., and MARCIA SALVATOR, | ) | Appeal from |
|       Plaintiffs, | ) | Circuit Court of |
|  v. | ) | McLean County |
| AIR & LIQUID SYSTEMS CORPORATION, Successor | ) | No. 16L20 |
| to Buffalo Pumps Inc.; AURORA PUMP COMPANY; | ) | |
| BRAND INSULATIONS, INC.; BORG WARNER | ) | |
| MORSE TEC, INC., as Successor by Merger to Borg | ) | |
| Warner Corp.; BRIDGESTONE AMERICAS, INC.; | ) | |
| BURNHAM, LLC; BW/IP, INC.; BRYANT HEATING | ) | |
| & COOLING SYSTEMS; CARRIER CORPORATION; | ) | |
| CHICAGO GASKET COMPANY; CLEAVER- | ) | |
| BROOKS, a Division of Aqua-Chem, Inc.; CRANE | ) | |
| COMPANY; DAP, INC.; DURO DYNE | ) | |
| CORPORATION; FLOWSERVE CORPORATION, f/k/a | ) | |
| Duriron Company, Inc., and as Successor to Byron | ) | |
| Jackson Pump Division, Durco, And BW/IP International, | ) | |
| Inc.; FMC CORPORATION, Successor of Peerless | ) | |
| Pumps; GENERAL GASKET CORPORATION; | ) | |
| GEORGIA-PACIFIC LLC; GOULDS PUMPS (IPG), | ) | |
| INC.; HONEYWELL INTERNATIONAL, INC.; | ) | |
| INGERSOLL-RAND COMPANY; ITT | ) | |
| CORPORATION; JOHN CRANE, INC.; JP BUSHNELL | ) | |
| PACKING SUPPLY CO.; McMASTER-CARR SUPPLY | ) | |
| CO.; METROPOLITAN LIFE INSURANCE | ) | |
| COMPANY; OWENS-ILLINOIS, INC.; PNEUMO | ) | |
| ABEX LLC; SCHNEIDER ELECTRIC USA INC., f/k/a | ) | |
| Square D; SEARS, ROEBUCK & COMPANY; | ) | |
| SPRINKMANN SONS CORPORATION; STERLING | ) | |
| FLUID SYSTEMS (USA) LLC; SUPERIOR BOILER | ) | |
| WORKS, INC.; TACO, INC.; TENNECO | ) | |
| AUTOMOTIVE OPERATING COMPANY; TRANE | ) | |
| U.S. INC.; UNION CARBIDE CORPORATION; | ) | |
| VIKING PUMP, INC.; WARREN PUMPS LLC; WEIL- | ) | |
| MCLAIN COMPANY; WESTERN AUTO SUPPLY | ) | |

COMPANY; YORK INTERNATIONAL )
CORPORATION; and ZURN INDUSTRIES LLC, )
      Defendants )
      )
(Cleaver-Brooks, Inc., a Division of Aqua-Chem, Inc., )    Honorable
Defendant-Appellant). )    Rebecca S. Foley,
      )    Judge Presiding

JUSTICE KNECHT delivered the judgment of the court, with opinion.
Justices Steigmann and Appleton concurred in the judgment and opinion.

## OPINION

¶ 1        Defendant, Cleaver-Brooks, Inc., a division of Aqua-Chem, Inc. (Cleaver-Brooks), appeals from the trial court's order finding it in "friendly contempt" and assessing a $1 fine for failing to comply with an order requiring it to produce copies of certain documents to plaintiffs, Larry Salvator, Sr., now deceased, and his wife, Marcia Salvator, in discovery. Cleaver-Brooks requests we reverse and vacate the discovery and contempt orders because (1) the court abused its discretion in ordering it to produce copies of the requested documents and (2) its refusal to comply with the discovery order was not contemptuous. We affirm the discovery order, vacate the contempt order, and remand for further proceedings.

¶ 2                       I. BACKGROUND

¶ 3                       A. Complaint

¶ 4        In February 2016, plaintiffs filed a complaint against Cleaver-Brooks and 42 other defendants, alleging, in part, Larry Salvator, Sr., sustained injuries caused by the inhalation of asbestos fibers during his work in close proximity to "asbestos[-]containing boilers, and associated gaskets and insulation" manufactured by Cleaver-Brooks in the 1960s and 1970s. Plaintiffs alleged theories of negligence based on Cleaver-Brooks's failure to (1) warn the exposure to asbestos caused serious disease, pulmonary fibrosis, malignancies, and death and

- 2 -

(2) provide instruction as to safe methods, if any existed, of handling and processing asbestos-containing products. Larry Salvator, Sr., ultimately identified 11 jobsites where he worked with equipment manufactured by Cleaver-Brooks. Due to the nature of Larry Salvator, Sr.'s injuries, plaintiffs sought and received an expedited discovery and trial schedule.

¶ 5                    B. Plaintiffs' Second Request for Production of Discovery

¶ 6          In November 2016, plaintiffs served Cleaver-Brooks with a second request for production of documents. In part, plaintiffs requested Cleaver-Brooks to produce "[t]he index cards referenced by [Cleaver-Brooks's corporate representative] at his depositions that he says he uses to perform searches for boilers at job sites [*sic*]."

¶ 7                    C. Cleaver-Brooks's Responses and Objections to
                       Plaintiffs' Second Discovery Request

¶ 8          In December 2016, Cleaver-Brooks filed responses and objections to plaintiffs' second request for production of documents. Cleaver-Brooks raised the following general objection:

> "Cleaver-Brooks objects to any [r]equest that relates to periods of time, geographical areas, or activities outside the scope of the allegations of the operative complaint as over broad [*sic*], irrelevant, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Any [r]equest that is not limited in time and scope to the particular facts of the case, by definition, calls for irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. It would also impose an unreasonable burden on Cleaver-Brooks to search

out, review, organize and produce information and documents not related to any issue in the case. Further, requiring Cleaver-Brooks to produce information without limitation to the particular facts of the case improperly shifts [p]laintiff[s'] burden of proof to Cleaver-Brooks."

It also raised the following specific objection to plaintiffs' request for production of its index cards:

"Cleaver-Brooks objects that this [r]equest is overly broad in time and scope, *** and unduly burdensome and oppressive. Cleaver-Brooks further objects because this [r]equest does not specify with reasonable particularity the documents sought and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in above referenced matter. Subject to the foregoing and without waiver, Cleaver-Brooks states that there are over 90,000 index cards and they are too voluminous to produce. Cleaver-Brooks has agreed to make the index cards available for [p]laintiff[s'] inspection in an orderly fashion at a mutually agreeable date and time."

The parties thereafter agreed plaintiffs would inspect the 90,000 index cards on January 10, 2017.

¶ 9                                D. Inspection Agreement

¶ 10          On January 4, 2017, Cleaver-Brooks sent plaintiffs a proposed inspection

agreement for plaintiffs' review and execution. Cleaver-Brooks alleged its index cards were a confidential customer list "not available to the public or to persons or entities other than the producing party and its affiliates, the disclosure of which would result in an identifiable, clearly defined and serious injury to [its] competitive and financial position." It requested plaintiffs to agree to the following inspection protocol:

"(a) The index cards shall not be taken out of order or removed from the drawer(s); (b) Plaintiff[s] shall not take notes or pictures of the index cards; (c) The use of cell phones shall not be permitted by [p]laintiff[s] in the inspection room; (d) Plaintiff[s] may designate individual index cards for copying by Cleaver-Brooks, at [p]laintiffs' expense, by way of a tab on the index card. Plaintiff may designate for copying cards that relate to sites that may be at issue in pending or future claims brought against Cleaver-Brooks by [the law firm representing plaintiffs]. Should there be any disputes over relevance, those disputes shall be addressed in a[n [Illinois Supreme Court Rule] 201(k) [(eff. July 1, 2014)] conference prior to production; (e) Copies shall be made by Cleaver-Brooks at a rate of $0.10 per page, which amount shall be paid by [p]laintiff[s]."

Cleaver-Brooks also requested plaintiffs to agree to the following confidentiality terms:

"The production of the relevant index cards will not be disclosed to anyone other than attorneys and other law firm personnel from the

firm Wylder, Corwin, Kelly working on cases filed by the Wylder, Corwin, Kelly law firm (including, without limitation, paralegals and support staff) against Cleaver-Brooks, the plaintiffs, and any consultants and experts retained by the parties for the purposes of either assisting counsel or testifying in Wylder, Corwin, Kelly asbestos law suits against Cleaver-Brooks. The confidential documents and information contained therein will not be disclosed to other third persons."

¶ 11    Plaintiffs refused to agree to the terms outlined in Cleaver-Brooks's inspection agreement.

¶ 12                    E. Cleaver-Brooks's Motion for a Protective Order

¶ 13    On January 9, 2017, Cleaver-Brooks filed a motion for a protective order, which it amended on January 10, 2017. In its amended motion, Cleaver-Brooks initially noted it had previously "objected to the production of all 90,000 index cards as overly broad in time and scope, unduly burdensome and oppressive, not specified with reasonable particularity, seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and too voluminous to produce, but agreed to make them available for [p]laintiffs' inspection at a mutually agreeable date and time." Cleaver-Brooks argued the index cards "contain[ed] proprietary and trade secret information[,] including the names of [its] customers," and the "[i]nspection and production of the confidential information *** prior to a protective order limiting the use of said information would put [it] at a significant competitive disadvantage by allowing competitors and other similarly situation the opportunity to access

- 6 -

confidential customer information." Cleaver-Brooks requested the trial court to enter a protective order limiting the disclosure and use of any index cards it produces. Cleaver-Brooks also requested, in the interest of judicial economy and in an effort to streamline discovery and reduce costs, the court order the inspection be a one-time inspection and apply "to all pending and future claims" brought against it by the law firm representing plaintiffs.

¶ 14 Attached to Cleaver-Brooks's motion was a proposed protective order, which indicated, in part, (1) "Cleaver-Brooks shall make available for inspection by [p]laintiffs *** over approximately 90,000 index cards" and (2) "[f]urnishing the index cards for inspection to the [p]laintiffs shall not constitute a waiver of any objections by Cleaver-Brooks as to the relevance of any individual index card[, and] [s]hould there be any disputes over relevance, those disputes shall be addressed in a *** Rule 201(k) conference prior to production by Cleaver-Brooks."

¶ 15 F. Hearing on Cleaver-Brooks's Motion for a Protective Order

¶ 16 On January 12, 2017, the trial court held a hearing on Cleaver-Brooks's motion for a protective order. Initially, in reviewing the events that led to its motion, Cleaver-Brooks noted it previously indicated it would make the index cards available for inspection, "subject to the objections" made in its response to plaintiffs' second request for production of documents. Cleaver-Brooks argued, because plaintiffs refused to agree to its inspection agreement, a protective order was necessary prior to the "production of [the] index cards" to protect their proprietary and confidential information from being disseminated to third parties, thereby causing it both business- and litigation-related economic and competitive harm. Cleaver-Brooks further argued, because the production of the index cards caused it to incur substantial costs and

affected ongoing business, a one-time inspection should be ordered.

¶ 17       Following Cleaver-Brooks's argument, the trial court inquired as follows:

> "My assumption, based on what I've read, is that Wylder, Corwin, Kelly will not receive a copy of all 90,000 [index cards]; is that true? They're going to go through and be marking those that they deem relevant and then those will be copied?"

To which Cleaver-Brooks responded, "Correct, your honor."

¶ 18       Plaintiffs argued, in part, Cleaver-Brooks's motion was "untimely," as the contents of the index cards had yet to be seen and its assertions were unverified. As an example, plaintiffs stated:

> "In the past, what has happened in cases I've been involved with document inspections is, we've gone to look at the documents. We've marked the documents that we wanted. And then defense counsel would say, ['o]kay, you've marked, you know, 100 pages or 200 pages or whatever.['] And then they would have their counsel look at those and say whether or not they thought any of the things marked should be protected.
>
> And in the interim, we don't even have a document to disseminate. We've seen them at that point. We could argue to the [c]ourt and the [c]ourt could have a copy of those documents to look at to say, ['][y]es, I agree with counsel. This is what's represented in these documents['] or, [']no, it's not.['] Then the

plaintiff could argue as to why the material contained in them

should not be privileged or protected or whatever or a trade secret,

I guess, is what they're arguing in this case."

Plaintiffs further assured the court they would not disseminate the customer lists to aid Cleaver-Brooks's business competitors and objected to a one-time inspection.

¶ 19　　　　The trial court denied Cleaver-Brooks's motion for a protective order, finding (1) Cleaver-Brooks failed to meet its burden to establish the records were trade secrets, and (2) Cleaver-Brooks's request for a one-time inspection was "premature," as it was uncertain whether the production of the index cards would become a routine discovery request. The court noted it would entertain a new motion for a protective order after plaintiffs' "inspection" if a dispute arose as to the confidentiality of the documents reviewed. The court further noted, "[t]o the extent that you need some guidelines or are seeking a ruling with respect to the parameters of the inspection, *** [plaintiffs will] need to tab and identify those [index] cards they wish to have reproduced." The trial court also indicated it would give Cleaver-Brooks leave to file a written motion for an Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) finding. No such motion was filed.

¶ 20　　　　　　　　　　　　　G. Inspection

¶ 21　　　　On January 18 and 19, 2017, Cleaver-Brooks allowed plaintiffs to inspect its 90,000 index cards at its facilities. Plaintiffs tabbed 5077 index cards to be copied and turned over.

¶ 22　　　　　　　　H. Cleaver-Brooks's Motion for a Continuance

¶ 23　　　　On January 24, 2017, Cleaver-Brooks filed a motion to continue the February 6,

2017, trial setting. In its motion, Cleaver-Brooks noted, in part, it needed to review the 7000 to 9000 index cards plaintiffs tabbed during their inspection for relevance.

¶ 24                                    I. Plaintiffs' Motion To Compel

¶ 25          On January 26, 2017, plaintiffs filed a motion to compel Cleaver-Brooks "to produce" copies of the 5077 index cards they had previously tabbed. Plaintiffs noted they did not understand Cleaver-Brooks's reference in its motion to continue to its need to review the index cards for relevance as "[t]he test for production of material in discovery is not that it be deemed 'relevant' by defense counsel after being produced for inspection." Rather, plaintiffs asserted "[i]f the cards were not discoverable, then they would not have been produced in the first place."

¶ 26                                    J. January 27, 2017, Hearing

¶ 27          On January 27, 2017, the trial court held a hearing to address various discovery issues and multiple defendants' motions to continue the February 6, 2017, trial date. In addressing a motion to continue, plaintiffs noted, in part:

> "[W]e know [the tabbed index cards are] relevant to Cleaver-Brooks['s] business in Illinois. We tabbed everything that was sold in Illinois. The hope of that would be that in this case it may be that it's relevant as far as what we tabbed, for example, in one of the drawers I was on had, quote, accessories. It had de-aerators. They were having to sell those over and over again. When we do the corporate rep we're going to have some questions on that in terms of is there asbestos in there, are they used only on Cleaver-Brooks boilers and so on. In addition, we don't get paid by the

- 10 -

hour. That's not a jab, it's just we don't. So it will allow us in some of these other cases in [Cleaver-Brooks] to serve the cards on them and say, you know, admit it, these are your 90,000 cards that you maintained, which is what they wanted initially in terms of, you know, there may be—someone walks in, has got Indiana exposure too we might have to look at the cards. But for Illinois that's part of why we did that. So when they say it's not relevant, I don't know how, it's discoverable, how it isn't—well, that's what your motion says. You have to determine relevance, that's your written motion. So all of the cards are relevant. It shows their business activities."

In response, Cleaver-Brooks noted:

"I'm not saying the [tabbed index cards] might not be relevant. I'm not saying that all the points that [plaintiffs] just made aren't potentially valid questions to ask my corporate rep next Friday. What I'm saying is we need more time to get 100 percent of the records."

After considering the various discovery issues and noting the unavailability of trial counsel and other issues contributing, the court granted the various motions to continue the trial setting and set the matter for trial on April 7, 2017. After continuing the trial date, plaintiffs agreed to postpone argument on their motion to compel until the next hearing.

¶ 28        K. Cleaver-Brooks's Response to Plaintiffs' Motion To Compel
                     and Motion for Protective Order

¶ 29        On February 8, 2017, Cleaver-Brooks filed a response to plaintiffs' motion to compel and a motion for a protective order. Cleaver-Brooks asserted, after reviewing the 5077 tabbed index cards, it determined only 13 index cards related to boilers or equipment located at the 11 jobsites Larry Salvator, Sr., identified. It agreed to produce the 13 index cards but objected to the production of the remaining cards as they were "completely irrelevant to the matters in this case." Specifically, Cleaver-Brooks asserted no evidence existed to suggest Larry Salvator, Sr., "worked at the jobsites listed on the 5064 remaining index cards or was present during the time periods tabbed equipment was shipped." Cleaver-Brooks argued plaintiffs "essentially tabbed any card they could locate that referenced Illinois." It further alleged some of the 5064 tabbed index cards related to out-of-state jobsites. Cleaver-Brooks characterized plaintiffs' actions as a "fishing expedition" to assist them in future cases. Cleaver-Brooks argued, as analogous to *In re All Asbestos Litigation*, 385 Ill. App. 3d 386, 895 N.E.2d 1155 (2008), the trial court should deny plaintiffs' motion to compel, as it was overbroad and the requested index cards were not relevant to the identified jobsites. Alternatively, if the court ordered it to produce all 5077 index cards, Cleaver-Brooks requested the court to enter a protective order limiting the disclosure and use of any index card. Cleaver-Brooks also requested, if the court granted plaintiffs' motion to compel, either (1) the order be final for purposes of appeal under Rule 304(a) (eff. Mar. 8, 2016), or (2) a finding of "friendly contempt" be entered against it.

¶ 30                    L. February 9, 2017, Hearing

¶ 31        On February 9, 2017, the trial court held a hearing on plaintiffs' motion to compel. Plaintiffs initially asserted the index cards had already been "produced," and they were simply waiting for copies of the index cards. Plaintiffs characterized Cleaver-Brooks's objection

as the refusal "to produce the records that [they have] already produced." Plaintiffs maintained Cleaver-Brooks's refusal to produce copies of the tabbed index cards was in bad faith to delay trial until Larry Salvator, Sr., died. Plaintiffs argued the tabbed index cards were relevant in several ways, such as the scope of Cleaver-Brooks's sales and product line, their corporate representative's familiarity with Cleaver-Brooks's boilers, and to show the types of accessories found on different types of boilers and the maintenance needs of those parts. Plaintiffs also argued the index cards could be used to impeach Cleaver-Brooks's corporate representative should he attempt to minimize Cleaver-Brooks's involvement in asbestos-containing boilers.

¶ 32       In response, Cleaver-Brooks indicated it allowed plaintiffs to review the contents of all 90,000 index cards with the understanding they would be tabbing only those index cards deemed relevant to their case. As to any question of waiver, Cleaver-Brooks argued:

> "To say that an inspection constitutes any sort of a waiver
>
> to relevance, that's absolutely not possible. Your Honor, it may be
>
> a waiver of privilege, but it's certainly not a waiver of relevance."

Cleaver-Brooks indicated it reviewed the 5077 index cards tabbed by plaintiffs and determined only 13 were relevant to plaintiffs' case. Cleaver-Brooks asserted plaintiffs went on a "fishing expedition" and developed a "CB hit list" based on the amount of tabbed index cards. Cleaver-Brooks argued plaintiffs requested index cards relating to boilers throughout the state of Illinois as well as other states where Larry Salvator, Sr., had not alleged exposure and for time periods when Larry Salvator, Sr., had not alleged exposure. As an example, Cleaver-Brooks presented the trial court with a requested index card for a "package feed system" shipped in 1981 to Cairo, Illinois—a product, period of exposure, and jobsite Larry Salvator, Sr., had not identified.

Cleaver-Brooks argued, like *All Asbestos Litigation*, plaintiffs should only be allowed to have information pertaining to the identified jobsites and periods of exposure.

¶ 33    In reply, plaintiffs maintained:

"We did only tab what was relevant in [our case]. The problem is that Cleaver-Brooks, in retrospect, has decided that they have a different view of relevance than [p]laintiff[s] [have], so they don't want to produce the documents that we tabbed.

Under Cleaver-Brooks' definition of relevance, something is only discoverable if it is related to a particular job site [*sic*]. And that's different than saying it's relevant to 'the case'. The case is more than just about a particular job site [*sic*]. *** Using the [example] that [Cleaver-Brooks's counsel] made to a [requested index card] from 1981, if there's a boiler record from the 1980s and it's the same model type as the one, for example, that Mr. Salvator was exposed to, we could point out to the jury you knew this product contained asbestos. Yes. You knew by '72, at least, that that was hazardous to human health and you kept selling it. You kept selling it through the '80s. Here's an index card that says you were still selling this asbestos containing boiler in 1981. So just right there, using the example that [Cleaver-Brooks's counsel] threw up to the [c]ourt, I can show why that is relevant to 'the case'. Because there's more than just exposure as an element of what [p]laintiff[s]

[have] [to] prove[ ]. We also have to prove negligence. And we can do that *** through these documents."

¶ 34  The trial court granted plaintiffs' motion to compel, finding the tabbed index cards were relevant and potentially linked to discoverable information. Specifically, the court found:

"There are many ways to approach the issue of relevance. And I don't think a defendant necessarily gets to decide for a plaintiff what is relevant. Plaintiff argues here that it's not just the job site [*sic*]. They're arguing that it's relevant to the scope of business and/or sales; perhaps impeachment purposes; the types of boilers. I have often seen in these types of cases where, through the corporate rep, [the] [p]laintiff has to establish the state of the art, what products were sold, what the company's knowledge was at a particular point in time, if they continued to sell those products after particular points in time in establishing negligence or their attempt to establish negligence."

The court further found *All Asbestos Litigation* to be distinguishable, in part, because plaintiffs requested only those cards they found to be relevant to their case, which amounted to 5077 of the 90,000 index cards.

¶ 35  The trial court anticipated the potential for a friendly contempt order, noting to plaintiffs' counsel, "we need to discuss the procedure from here because it may be a situation as in [*Manns v. Briell*, 349 Ill. App. 3d 358, 811 N.E.2d 349 (2004),] where they're going to refuse

- 15 -

to comply and ask for a, apparently, contempt finding." Cleaver-Brooks responded first by asking the court to enter a "confidentiality order" with regard to the disclosure of information "to other plaintiff's firms or other people outside of their law firm," which plaintiffs objected to and the court denied. Cleaver-Brooks then asked for a Rule 304(a) finding, which plaintiffs also objected to and the court denied. The court noted if Cleaver-Brooks intended to refuse to comply with the court's order, regardless of a proposed deadline to turn over the tabbed index cards, then it would "forge ahead with a friendly contempt finding" and a monetary fine to give it the opportunity to appeal. Cleaver-Brooks asked the court to enter a deadline that day so a contempt order could follow. Plaintiffs' counsel requested a short period to discuss with his clients and cocounsel whether they would continue to demand the production of the index cards or forgo the discovery and proceed to trial because of Larry Salvator, Sr.'s health. In doing so, plaintiffs' counsel noted: "We have a number of cases involving Cleaver-Brooks, so this issue won't go away by any stretch. But we do have a man who is literally on his death bed." The court set a February 24, 2017, deadline to produce copies of the tabbed index cards and continued the hearing.

¶ 36                                M. February 24, 2017, Hearing

¶ 37            During a February 24, 2017, hearing, Cleaver-Brooks indicated it was refusing to produce copies of the remaining tabbed index cards and requested the trial court to enter a friendly contempt order against it. Plaintiffs again argued Cleaver-Brooks's refusal to produce the copies of the remaining index cards was a bad-faith tactic to delay trial. During its argument, the court interrupted plaintiffs' counsel, explaining it would enter a contempt order only if plaintiffs requested such relief and still needed the remaining index cards:

- 16 -

"I'm going to stop you now because I'm only going to do that if that's the plaintiff[s'] request to do it. *** I think it's up to the plaintiff[s] to determine what type of relief they wish to seek if they want to ask for that finding to enforce it. They may not wish to seek the records at all."

Cleaver-Brooks suggested issues relating to the index cards were likely to be raised in different ways throughout the course of litigation. Cleaver-Brooks argued, to protect its due process rights, the issue had to be immediately appealed or plaintiffs' motion to compel should be withdrawn. Cleaver-Brooks assured the court its refusal to comply was in good faith because it believed the remaining index cards were not relevant. Plaintiffs indicated they were "not requesting any relief from the court at that time." Cleaver-Brooks maintained it was within the court's discretion to enter an order of friendly contempt without a request from plaintiffs' counsel. The court indicated it would not make a ruling that day and continued the matter.

¶ 38                    N. February 27, 2017, Hearing

¶ 39        During a February 27, 2017, hearing, Cleaver-Brooks again requested the trial court enter an order of friendly contempt against it. Cleaver-Brooks maintained it had a good-faith basis to challenge the discovery order and the issue would likely continue to come up during litigation. Plaintiffs argued, in part, Cleaver-Brooks should not benefit from its own refusal to comply with a court order and its request was in bad faith, as it was for the purpose of delaying trial. Plaintiffs indicated they were going to ask the court "for relief" for Cleaver-Brooks's refusal to turn over the discovery but not at that time.

¶ 40        The trial court found Cleaver-Brooks in "friendly contempt" for refusing to

comply with its discovery order and imposed a $1 fine. The court explained, "when a contemnor refuses to follow the court's order and does not hold the court in disdain or subject it to scorn, the proper procedure to test [its] order on appeal is for the contemnor to request the trial court to enter a citation of contempt." The court noted: "I do believe that [Cleaver-Brooks'] request is being made in good faith. I do not believe it's being made in an attempt to—for the sole purpose of delaying the trial, to harass[,] or any of those other reasons."

¶ 41                    O. Plaintiffs' Motion for Modification or Rehearing of
                            the Trial Court's February 27, 2017, Judgment

¶ 42          On February 28, 2017, plaintiffs filed a "motion for modification or rehearing of the [trial] court's February 27, 2017, judgment finding Cleaver-Brooks in 'friendly contempt.' " Cleaver-Brooks later filed a response in opposition.

¶ 43                    P. Cleaver-Brooks's Notice of Appeal and Motion To Stay

¶ 44          On March 1, 2017, having been found to be in "friendly contempt" and assessed a $1 fine for failing to comply with the trial court's February 9, 2017, discovery order, Cleaver-Brooks filed a (1) notice of appeal from the trial court's friendly contempt "order" under Rule 304(b)(5) (eff. Mar. 8, 2016) (providing "[a]n order finding a person or entity in contempt of court which imposes a monetary or other penalty [is immediately appealable without a special finding]") and (2) motion to stay all proceedings under Rule 305(b) (eff. July 1, 2004) pending the resolution of its appeal.

¶ 45                              Q. March 3, 2017, Hearing

¶ 46          On March 3, 2017, the trial court held a hearing on plaintiffs' motion for modification or rehearing of the trial court's February 27, 2017, judgment and Cleaver-Brooks's motion to stay all proceedings. Following argument, the court (1) denied plaintiffs' motion and

(2) granted Cleaver-Brooks's motion. The court stayed all litigation pending the resolution of this appeal.

¶ 47          R. Larry Salvator, Sr.'s Death and Plaintiffs' Notice of Appeal

¶ 48          On March 11, 2017, Larry Salvator, Sr., died. On March 31, 2017, plaintiffs filed a notice of appeal from the trial court's order granting Cleaver-Brooks's motion to stay.

¶ 49                    S. Plaintiffs' Appeal

¶ 50          In July 2017, this court affirmed the trial court's order staying all litigation pending the resolution of this appeal, finding plaintiffs failed to demonstrate the court's decision was an abuse of its discretion. *Salvator v. Cleaver-Brooks, Inc.*, 2017 IL App (4th) 170244-U, ¶ 60.

¶ 51                    II. ANALYSIS

¶ 52          In this interlocutory appeal, Cleaver-Brooks requests we reverse and vacate the February 9, 2017, discovery order and the February 27, 2017, contempt order because (1) the trial court abused its discretion in ordering it to produce copies of the 5077 tabbed index cards and (2) its refusal to comply with the discovery order was not contemptuous.

¶ 53                    A. Jurisdiction

¶ 54          As an initial matter, plaintiffs suggest this court may not have jurisdiction over the instant appeal due to the trial court's characterization of its contempt finding as an "order" rather than a "judgment." We addressed and rejected this argument in plaintiffs' appeal from the trial court's order granting Cleaver-Brooks's motion to stay. See *id.* ¶ 54. No matter how the trial court characterized its contempt finding, the substance of the order demonstrated it satisfied the requirements to be immediately appealable. *Id.* We have jurisdiction.

¶ 55                                    B. February 9, 2017, Discovery Order

¶ 56        Ordinarily, discovery orders are only reviewable on appeal from a final judgment. *Norskog v. Pfiel*, 197 Ill. 2d 60, 69, 755 N.E.2d 1, 8 (2001). Where an appeal is taken from a finding of contempt for failure to comply with a discovery order, our review of the contempt finding necessarily encompasses a review of the propriety of the underlying discovery order on which the contempt finding is based. *Harris v. One Hope United, Inc.*, 2015 IL 117200, ¶ 6, 28 N.E.3d 804; *Norskog*, 197 Ill. 2d at 69, 755 N.E.2d at 8. Accordingly, we shall review the contentions raised by both Cleaver-Brooks and plaintiffs with respect to the February 9, 2017, discovery order.

¶ 57        Cleaver-Brooks requests we reverse and vacate the February 9, 2017, discovery order because the trial court abused its discretion in ordering it to produce copies of the 5077 tabbed index cards. Specifically, Cleaver-Brooks argues the court's finding was in error because (1) plaintiffs failed to present any reasonable argument as to why 5064 of the tabbed index cards were relevant or likely to lead to relevant evidence, (2) plaintiffs' "true motive" in seeking the index cards was to conduct an improper "fishing expedition" for the benefit of other plaintiffs within and outside of Illinois; and (3) our courts prohibit discovery orders based on wide, sweeping discovery requests.

¶ 58        Plaintiffs disagree, arguing (1) Cleaver-Brooks's appeal is frivolous and brought in bad faith, (2) Cleaver-Brooks waived any relevance objection by producing the index cards on January 18 and 19, 2017, (3) Cleaver-Brooks's boilerplate objections in its discovery responses did not preserve any relevance objection, and (4) the trial court properly concluded copies of 5077 of Cleaver-Brooks's 90,000 index cards were subject to disclosure, as they were relevant

and not requested as part of a "fishing expedition."

¶ 59      In its initial brief, Cleaver-Brooks notes "[t]he thrust of plaintiffs' argument below was that [it] had already 'produced' all of the index cards at issue and only later raised an improper relevance objection to the majority of the cards when it came time to photocopy and deliver them." Cleaver-Brooks asserts—without citing any authority—"[t]his argument is misleading, and intentionally conflates the inspection of document[s] with their eventual production after review by defense counsel." Cleaver-Brooks maintains it "never agreed to produce, and in fact never produced, any index cards to plaintiffs' counsel until it reviewed them for relevance."

¶ 60      Plaintiffs maintain Cleaver-Brooks waived any relevance objection by producing the index cards on January 18 and 19, 2017. Specifically, plaintiffs assert Cleaver-Brooks's argument to the contrary is "a flimsy appeal to semantics," which creates "a false distinction between 'inspection' and 'production.' " Plaintiffs highlight Cleaver-Brooks's failure to cite any authority holding "a party can voluntarily produce documents in discovery and then later claim those documents are not discoverable due to relevance." In fact, plaintiffs note not a single case cited by Cleaver-Brooks before this court or the trial court follows such an approach.

¶ 61      In its reply brief, Cleaver-Brooks asserts plaintiffs have forfeited their waiver argument by failing to provide authority in support of their position. Alternatively, Cleaver-Brooks contends, even if this court elects to address the issue, "there is persuasive contrary authority establishing that the production of documents for inspection does not waive a relevance objection to the further copying, production[,] and use of a document so inspected." In support, Cleaver-Brooks cites *Calvert v. Reinisch*, 218 F.R.D. 497 (W.D. Tex. 2003).

¶ 62　　　　We initially reject Cleaver-Brooks's argument suggesting plaintiffs have forfeited their argument by failing to provide authority in support of their position. Throughout the proceedings below and now on appeal, Cleaver-Brooks has maintained a distinction exists between the production of documents for inspection and outright production. In doing so, Cleaver-Brooks provided no authority in support of its position either before the trial court or in its initial brief on appeal. In responding to Cleaver-Brooks's unsupported argument, plaintiffs maintained such a distinction was an appeal to semantics and pointed out no case cited by Cleaver-Brooks followed such an approach. Under these circumstances, we reject Cleaver-Brooks's forfeiture argument.

¶ 63　　　　Again, Cleaver-Brooks asserts "there is persuasive contrary authority establishing that the production of documents for inspection does not waive a relevance objection to the further copying, production[,] and use of a document so inspected." Setting aside the fact this "persuasive contrary authority" is an order from a federal district court in Texas, we find it far from "establish[es]" the procedure for which Cleaver-Brooks advocates. Rather, in *Calvert* the court held it was "*not inclined to agree* that the production for inspection of documents, as kept in the ordinary course of business, is *necessarily* a waiver of any specific objection to the further production, copying, and use of a document so inspected, but not within the scope of the original discovery request." (Emphases added.) *Calvert*, 218 F.R.D. at 502. Cleaver-Brooks's reliance on *Calvert* is unpersuasive. Absent any Illinois authority providing for such a distinction in our discovery rules, we will not entertain such an approach, nor do we understand such an approach.

¶ 64　　　　While it appears Cleaver-Brooks intended to preserve its right to review the tabbed index cards for relevance, the record shows Cleaver-Brooks failed to do so. Prior to

production, Cleaver-Brooks did not obtain a ruling from the trial court or enter into an agreement with plaintiffs whereby it could review the index cards tabbed by plaintiffs for relevance. Instead, Cleaver-Brooks voluntarily produced the index cards without any reservation. By doing so, Cleaver-Brooks forfeited its relevance objection. See *Gallagher v. Lenart*, 226 Ill. 2d 208, 229, 874 N.E.2d 43, 56 (2007) (forfeiture is the failure to make a timely assertion of a known right whereas waiver is the intentional relinquishment of a known right). On this basis alone, the trial court's judgment may be sustained. See *Elston v. Oglesby*, 2014 IL App (4th) 130732, ¶ 12, 21 N.E.3d 57 ("[T]his court may affirm the trial court's judgment on any basis that is supported by the record." (Internal quotation marks omitted.)).

¶ 65　　　　　　Forfeiture aside, Cleaver-Brooks has failed to show the trial court abused its discretion in ordering it to produce copies of 5077 of its 90,000 index cards on the basis they were relevant and not requested as part of an improper "fishing" expedition. Our supreme court has stated: "The objectives of pretrial discovery are to enhance the truth-seeking process, to enable attorneys to better prepare for trial, to eliminate surprise[,] and to promote an expeditious and final determination of controversies in accordance with the substantive rights of the parties." *D.C. v. S.A.*, 178 Ill. 2d 551, 561, 687 N.E.2d 1032, 1037 (1997). Illinois Supreme Court Rule 201(b)(1) (eff. July 1, 2014) provides, in part, as follows:

> "[A] party may obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking disclosure or of any other party, including the existence, description, nature, custody, condition, and location of any

documents or tangible things, and the identity and location of

persons having knowledge of relevant facts."

For purposes of Rule 201(b)(1), relevance has been interpreted broadly to include "not only that

which is admissible at trial, but also that which leads to admissible evidence." *Manns*, 349 Ill.

App. 3d at 361, 811 N.E.2d at 352; see also *In re Estate of Blickenstaff*, 2012 IL App (4th)

120480, ¶ 48, 980 N.E.2d 1285. "[A] [trial] court should deny a discovery request where there is

insufficient evidence that the requested discovery is relevant or will lead to such evidence."

*Leeson v. State Farm Mutual Automobile Insurance Co.*, 190 Ill. App. 3d 359, 366, 546 N.E.2d

782, 787 (1989); see also *All Asbestos Litigation*, 385 Ill. App. 3d at 389, 895 N.E.2d at 1157.

¶ 66    "A trial court is given great latitude in determining the scope of discovery, and

discovery orders will not be disturbed absent an abuse of discretion." *Manns*, 349 Ill. App. 3d at

361, 811 N.E.2d at 352; see also *D.C.*, 178 Ill. 2d at 559, 687 N.E.2d at 1036. "The standard of

'abuse of discretion' is the most deferential standard of review recognized by the law; a decision

will be deemed an abuse of discretion only if the decision is 'unreasonable and arbitrary or where

no reasonable person would take the view adopted by the [trial] court.' " *Pekin Insurance Co. v.*

*St. Paul Lutheran Church*, 2016 IL App (4th) 150966, ¶ 69 (quoting *Gulino v. Zurawski*, 2015 IL

App (1st) 131587, ¶ 64, 43 N.E.3d 1102). Where reasonable minds could differ on the merits of

the arguments presented, we will defer to the trial court. *Estate of Blickenstaff*, 2012 IL App

(4th) 120480, ¶ 51, 980 N.E.2d 1285.

¶ 67    Cleaver-Brooks contends plaintiffs failed to present any reasonable argument as

to why the 5064 index cards were relevant or likely to lead to relevant evidence. At the hearing

on the motion to compel, plaintiffs asserted the index cards were relevant, in part, to show the

scope of Cleaver-Brooks's sales and product line, their corporate representative's familiarity with Cleaver-Brooks's boilers, and the types of accessories found on different types of boilers and the maintenance needs of those parts. Cleaver-Brooks presented no argument addressing the purposes for which plaintiffs asserted the index cards were relevant. Instead, for the first time on appeal, Cleaver-Brooks takes issue with plaintiffs' alleged purposes for this evidence. By failing to present argument before the trial court on this issue, Cleaver-Brooks has forfeited the opportunity to do so on appeal. See *Vantage Hospitality Group, Inc. v. Q Ill Development, LLC*, 2016 IL App (4th) 160271, ¶ 49, 71 N.E.3d 1 ("It has long been the law of the State of Illinois that a party who fails to make an argument in the trial court forfeits the opportunity to do so on appeal."). In reaching its decision, the trial court explicitly found the index cards were relevant to establish negligence by showing, through Cleaver-Brooks's corporate representative, "the state of the art, what products were sold, what the company's knowledge was at a particular point in time, [and] if they continued to sell those products after particular points in time." Cleaver-Brooks failed to address the court's reasoning other than a conclusory statement in its initial brief suggesting the court's reasoning "fails to justify the sweeping discovery that was ordered." Cleaver-Brooks has failed to show the trial court's conclusion was unreasonable.

¶ 68        Cleaver-Brooks also argues plaintiffs' "true motive" in seeking the index cards was to conduct an improper "fishing expedition" to benefit other plaintiffs within and outside of Illinois. Cleaver-Brooks raised this argument before the trial court. As additional support for its position, Cleaver-Brooks now cites plaintiffs' (1) refusal to agree to its inspection agreement, (2) comments at the January 27, 2017, hearing, suggesting they could use the index cards in other cases, and (3) refusal to agree to a "confidentiality order" after copies of the tabbed index

cards were ordered to be produced. We cannot say, even if we consider the additional evidence Cleaver-Brooks cites for the first time on appeal, the trial court's rejection of this argument was unreasonable. That is, we cannot say the trial court's conclusion the index cards were requested for a legitimate purpose was unreasonable.

¶ 69　　　　Last, Cleaver-Brooks asserts the trial court's discovery order is based on the type of wide, sweeping discovery requests prohibited by our courts. In support, Cleaver-Brooks relies on *All Asbestos Litigation* and the cases cited therein. Cleaver-Brooks, both before the trial court and now on appeal, analogizes the discovery request in this case to the discovery request in *All Asbestos Litigation*, 385 Ill. App. 3d at 392, 895 N.E.2d at 1159-60, which the appellate court found to be overly broad. In that case, even though it was undisputed the defendant did not provide its product to any jobsite identified by the plaintiffs, the plaintiffs requested the defendant "to produce all invoices, records, purchase orders, receipts, specifications, bills of lading, sales memoranda, business records correspondence, publications, sales brochures, manuals, instruction sheets or any other documents concerning the sales of [the defendant's] products to any person or entity in the State of Illinois, as well as documents indicating knowledge of hazards relating to asbestos fibers or [a]sbestine particles, from 1948 through 1986." *Id.* at 388, 895 N.E.2d at 1156. Conversely, in this case plaintiffs requested Cleaver-Brooks, who provided its product to 11 identified jobsites, to produce copies of 5077 of its 90,000 index cards. We find, unlike the discovery requests in *All Asbestos Litigation* and the cases cited therein, plaintiffs' discovery request was sufficiently limited and does not amount to the type of wide, sweeping discovery requests prohibited by our courts.

¶ 70　　　　Given the arguments presented at the hearing on the motion to compel and in light

of the great latitude given to trial courts in determining the scope of discovery, we find Cleaver-Brooks has failed to demonstrate the trial court abused its discretion in ordering it to produce copies of 5077 of its 90,000 index cards.

¶ 71                                C. February 27, 2017, Contempt Order

¶ 72            Cleaver-Brooks requests we reverse and vacate the February 27, 2017, contempt order because its refusal to comply with the discovery order was not contemptuous. Plaintiffs do not present argument on this issue in their brief. Where the refusal to comply with a court order is made in good faith to preserve an issue for appeal, this court may vacate a contempt order and monetary fine. *Cangelosi v. Capasso*, 366 Ill. App. 3d 225, 230, 851 N.E.2d 954, 959 (2006). Given the record presented, we find Cleaver-Brooks's refusal to comply with the trial court's discovery order was a good-faith effort to test the correctness of the order on appeal. We vacate the trial court's order finding Cleaver-Brooks in friendly contempt and assessing a $1 fine.

¶ 73                                D. Rule 23 Orders

¶ 74            As a final matter, we must note counsel for Cleaver-Brooks cites multiple orders filed under Illinois Supreme Court Rule 23 (eff. July 1, 2011) in both its initial and reply briefs. We remind counsel such orders are not precedential and may not be cited by any party except in the limited circumstances allowed under Rule 23(e)(1). As such, we have declined to consider those orders in the resolution of this matter.

¶ 75                                III. CONCLUSION

¶ 76            We affirm the February 9, 2017, discovery order, vacate the February 27, 2017, contempt order; and remand the cause for further proceedings.

¶ 77            Affirmed in part and vacated in part; cause remanded.