2023 IL App (2d) 230059-U
No. 2-23-0059
Order filed November 2, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ANDREW HOOKE, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 21-L-378 |
| | ) | |
| MONTESSORI SCHOOL OF LAKE | ) | |
| FOREST, DEBRA PAKKALA, and | ) | Honorable |
| ANN JORDAHL, | ) | Jorge L. Ortiz and |
| | ) | Jacquelyn D. Melius |
| Defendants-Appellees. | ) | Judges, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Justices Jorgensen and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not err in (1) setting parameters on the depositions of defendants' affiants, (2) entering what amounted to summary judgment in favor of defendants, and (3) denying plaintiff's motion for leave to file an amended complaint. Therefore, we affirm.

¶ 2    Plaintiff, Andrew Hooke, brought a multi-count negligence complaint against his former school, the Montessori School of Lake Forest (the school), the executive director of the School at the time of the incident, Ann Jordahl, and the teacher assigned to plaintiff's classroom, Debra Pakkala, seeking damages stemming from an injury plaintiff sustained to his right eye while at the

School. Plaintiff amended the complaint twice, and the circuit court ultimately dismissed plaintiff's second amended complaint with prejudice pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2020)). Plaintiff appeals, arguing that the court erred in limiting the topics on which he could depose defendants' affiants in support of their motion to dismiss, striking portions of the counter-affidavits plaintiff offered in support of his response, dismissing with prejudice his second amended complaint, and denying him leave to file a third amended complaint. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     This matter arises from an injury plaintiff received at the school on December 11, 2012. Plaintiff, then a sixth-grade student, was injured when another minor student in his classroom, whom we will refer to as A.B., shot a pencil into plaintiff's right eye using a rubber band. Plaintiff's cornea was torn, which he alleges caused him to suffer severe and permanent injuries.

¶ 5     More than eight years later,[1] on May 20, 2021, plaintiff filed a six-count negligence complaint against the school, Jordahl, and Pakkala. Plaintiff did not name A.B. as a defendant. In his complaint, plaintiff alleged that, at the time of the incident, Pakkala left her classroom unsupervised, which provided A.B. an opportunity to harm plaintiff, and that defendants either knew or should have known that A.B. posed a threat of physical harm to the students because the School possessed written documentation that A.B. had verbally threatened other students at the

_____

[1]Defendants concede that the complaint was timely under section 5/13-211 of the Code (735 ILCS 5/13-211 (West 2020)), which allows a minor to "bring an action for personal injuries within two years after the minor turns 18, regardless of whether the cause of action accrued more than two years earlier." *Pirrello v. Maryville Academy, Inc.*, 2014 IL App (1st) 133964, ¶ 14.

School, including a prior incident when A.B. threatened to stab a student with a Halo[2] pencil. Counts I and II alleged direct negligence and willful and wanton misconduct against the school, respectively; counts III and IV were directed at Jordahl and alleged negligence and willful and wanton misconduct, respectively; and counts V and VI raised claims against Pakkala for negligence and willful and wanton conduct, respectively.

¶ 6    On August 19, 2021, defendants filed a combined motion to dismiss plaintiff's complaint pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2020)). Pertinently, under section 2-615 of the Code (*id*. § 2-615) defendants argued that (1) the complaint lacked sufficient facts to establish that defendants owed plaintiff a duty to prevent the injury, (2) plaintiff could not maintain a direct negligence claim against the school, and (3) the complaint failed to allege facts to support a finding of willful and wanton misconduct by defendants. Defendants also argued that each count should be dismissed pursuant to section 2-619(a)(9) of the Code (*id*. § 2-619(a)(9)) because plaintiff's claims were barred by affirmative matter, namely that defendants lacked any knowledge prior to the incident that A.B. posed a threat to others at the school, the classroom was not unsupervised at the time of the incident, and because defendants were immune under section 24-24 of the School Code (105 ILCS 5/24-24 (West 2020)).

¶ 7    In support of their motion to dismiss, defendants attached affidavits from three individuals, namely: Hope Allegretti, Jordahl, and Pakkala. Allegretti, the current executive director at the school, averred that she reviewed the school's records concerning A.B., but that the school did not

_____

[2]Halo is a popular first-person shooter videogame franchise. Based on exhibits included in the record, we reasonably presume that plaintiff's reference to "a Halo pencil" refers to a pencil that is adorned with a photo or design from the Halo videogame franchise.

possess any records indicating that A.B. had physically harmed any student or that he had threatened to do so. Likewise, the school did not possess any documents from parents that such physical abuse had occurred, nor did it possess documentation that A.B. had threatened to harm a student with a Halo pencil. Allegretti further attested that, based on her review of the documentation related to the incident, a teacher aide, Barbara Beyers, was in the classroom at the time of plaintiff's injury and the classroom was thus not unsupervised when plaintiff was injured.

¶ 8 Jordahl, the executive director of the school at the time the incident occurred, averred that she was unaware of any prior reports or incidents in which A.B. physically harmed or verbally threatened to harm any student at the school, including any reports by any parent of a student regarding A.B. threatening a fellow student with a Halo pencil, and that Beyers was in the classroom at the time of the incident.

¶ 9 The third affidavit was prepared by Pakkala, who was plaintiff's classroom teacher at the time of the injury. Pakkala averred that she was unaware of any reports or incidents prior to plaintiff's injury regarding A.B. physically harming or verbally threatening to harm any students at the school, and she was unaware of any reports or incidents prior to the occurrence regarding A.B. physically harming or verbally threatening to harm students at the school. She also was unaware of prior incidents or reports by any parent that A.B. had threatened to stab their child with a Halo pencil. Pakkala also attested that the classroom was not unsupervised at the time of the incident because she "left the classroom in the care of two adults," Beyers and a Spanish teacher.

¶ 10 The circuit court entered an order on September 1, 2021, continuing defendants' section 2-619 motion and setting a briefing schedule on defendants' section 2-615 motion to dismiss.

¶ 11 On October 20, 2021, plaintiff responded to the section 2-615 motion to dismiss. He disputed defendants' arguments that they did not owe plaintiff a duty to prevent the injury and that

the complaint failed to allege facts sufficient to establish a claim for willful and wanton misconduct, but he expressly conceded that he could not maintain a direct negligence action against the school (count I) based on defendants' arguments raised in their section 2-615 motion to dismiss, and he withdrew that claim.

¶ 12    On December 8, 2021, following oral argument by the parties, the circuit court denied defendants' section 2-615 motion to dismiss and granted plaintiff leave to file an amended complaint removing the direct negligence count against the School.

¶ 13    Plaintiff thereafter filed an amended complaint on December 13, 2021. Pertinently, he dropped the ordinary negligence counts against the School, Jordahl, and Pakkala (counts I, III, and IV in the initial complaint, respectively), realleged the willful and wanton counts against the School, Jordahl, and Pakkala, and added a *respondeat superior* claim against the school due to the alleged willful and wanton conduct of Jordahl and Pakkala. As a result, plaintiff's amended complaint alleged willful and wanton conduct against the school (count I), Jordahl (count II), and Pakkala (count III), and a willful and wanton count against the school under a theory of *respondeat superior* (count IV).

¶ 14    On January 21, 2022, after obtaining leave of court, plaintiff filed a second amended complaint, which is the subject of the instant appeal. He raised the same claims and operative facts he alleged in the first amended complaint, but he removed several allegations related to the School's alleged failure to provide adequate training and supervision for its staff and failure to adequately staff the classroom prior to the incident. Plaintiff also detailed the specific circumstances of the incident. Specifically, Pakkala exited her classroom and left it unattended and, in her absence, A.B. "took the pencil that [plaintiff] was using, then used a rubber band to shoot the pencil at [plaintiff] and the pencil struck [plaintiff] in the right eye."

¶ 15    On February 4, 2022, defendants moved to dismiss plaintiff's second amended complaint pursuant to section 2-619(a)(9) of the Code.  Similar to their prior motion to dismiss, defendants argued that dismissal was warranted because defendants lacked prior knowledge that A.B. posed a threat to other students and therefore were immune from liability under the School Code.  In support of their first argument, defendants re-attached to their motion the affidavits prepared by Allegretti, Jordahl, and Pakkala, which they contended sufficed for affirmative matter under section 2-619(a)(9).  Relying on the affidavits, defendants argued that the second amended complaint consisted of "conclusions of law and conclusions of material fact which must be disregarded," including plaintiff's allegations that the school:

> "had written records indicating that A.B. was physically abusive to other students, and verbally threatened other students, that Defendant-Jordahl was informed that A.B. threatened to stab another student with a Halo pencil, that these defendants knew that A.B. posed a threat to other students and that the classroom was unsupervised."

In defendants' view, the affidavits "directly contradict [these] cited crucial conclusions of law and conclusions of material fact."  Defendants continued that the affidavits "establish an affirmative matter barring the plaintiff's willful and wanton claims" because, in the absence of notice that A.B. was a threat to other students, defendants' conduct could not serve as a basis for a willful and wanton misconduct claim as a matter of law.

¶ 16    Concerning their immunity argument, defendants observed that each of plaintiff's counts "consist[ed] of allegation[s] related to the supervision and discipline of children" and were therefore barred under section 2-619(a)(9) of the Code by virtue of "the immunity granted to schools and educators under [section 24-24 of the School Code] and the doctrine of *in loco parentis* absent a showing of willful and wanton conduct."

¶ 17    On April 12, 2022, the circuit court entered an order setting an amended briefing schedule on defendants' motion to dismiss, whereby plaintiff was given until August 2, 2022, to respond to defendants' motion, defendants were granted until August 31, 2022, to file a reply brief in support, and hearing on the motion was scheduled for September 14, 2022. The court also entered a case management order and trial continuance order setting a discovery cutoff date of November 21, 2022, and scheduling trial for January 30, 2023.

¶ 18    Plaintiff's counsel moved to withdraw on August 9, 2022, which was after plaintiffs' brief in response to the motion to dismiss was due. The circuit court granted the motion and plaintiff was given 45 days to retain new counsel. On September 27, 2022, plaintiff appeared *pro se*, and the trial court entered a revised briefing schedule on defendants' motion to dismiss, which allowed plaintiff to file a response to defendant's motion by October 11, 2022, allowed defendants until October 25, 2022, to file a reply in support, and scheduling a hearing date on the motion for November 9, 2022.

¶ 19    Plaintiff retained new counsel on October 5, 2022, who filed an emergency motion to vacate the briefing schedule, as well as the case management and trial date orders. He also requested that defendants' motion to dismiss be entered and continued until after written and oral fact discovery could be completed. Plaintiff argued that, although the parties had answered written discovery, no motions were yet filed regarding defendants' objections or answers to plaintiff's discovery, and no depositions had yet been taken. Plaintiff contended that further discovery was necessary in order for him to effectively oppose the motion to dismiss.

¶ 20    On October 6, 2022, the circuit court vacated the previous briefing schedule, granted plaintiff leave to issue deposition subpoenas to Allegretti, Jordahl, and Pakkala, extended the briefing schedule, set the hearing on the motion to dismiss for December 20, 2022, and indicated

that it would address plaintiff's requests for further discovery and postponement of trial at the time of the hearing on defendants' motion to dismiss.

¶ 21    On October 21, 2022, plaintiff filed a motion to clarify the parameters, if any, for the depositions of the affiants to defendants' motion to dismiss. The motion was necessitated, according to plaintiff, because the parties were unable to agree on the scope of permissible inquiry for said depositions. Plaintiff sought to depose Allegretti, Jordahl, and Pakkala, on the subject matter of their affidavits, including any behavior, drawings, threats, language, or other concerning issues they were aware of relating to A.B., not only as it related to or was directed to other students, but also as to any concerns they were aware of generally with A.B. He framed the issue as concerning "whether the Affiants may be questioned on direct threats or behavioral concerns of [A.B.] directly only to other students at the school, or can be questioned on any concerns they were aware of generally regarding [A.B.'s] behavior."

¶ 22    Defendants responded to the motion to clarify on October 26, 2022. Premised on the argument that plaintiff's suggested line of inquiry would circumvent A.B.'s privacy rights under the Health Insurance Portability and Accountability Act of 1996 (HIPPA) and the state and federal constitutions, defendants requested that the court limit plaintiff "to deposing these defendants regarding the contents of their affidavits only" and bar plaintiff from inquiring "about A.B.'s [behavior] generally, or communications the school had with other individuals outside of whether A.B. was reported as a danger to other students prior to the date of the occurrence." In defendants' view, A.B.'s "general behavior and *** drawings" were irrelevant. Defendants also sought leave to depose Ann Forowycz, who plaintiff identified during discovery as the parent of the child whom A.B. allegedly threatened to stab with a Halo pencil.

¶ 23     On October 28, 2022, plaintiff filed a reply in support of his motion to clarify. He reiterated the argument that he should be permitted to fully question Allegretti, Jordahl, and Pakkala regarding the matters raised in their affidavits "and natural corollaries derived therefrom, including any behavior, drawings, threats, language, or other concerning issues they were aware of relating to [A.B.], not only as it was directed to other students, but rather any concerns they were aware of or should have been aware of with [A.B.]." Plaintiff further argued that defendants lacked standing to assert A.B.'s right to privacy and that, in any event, defendants failed to specify which provisions of HIPAA or the state and federal constitutions they relied on to support their argument.

¶ 24     On November 1, 2022, after hearing oral argument, the circuit court ruled in favor of defendants and limited the subject matter and extent to which plaintiff was permitted to question defendants' affiants at deposition. The written order indicates that plaintiff was prohibited from questioning the affiants regarding: (1) threats A.B. made to anyone other than students, teachers, and staff at the School; (2) A.B.'s general behavior; and (3) A.B.'s mental health evaluations, medical diagnoses, individualized education program (IEP), plans based on section 504 of the Rehabilitation Act of 1973, or medications. Notwithstanding the foregoing, plaintiff was expressly permitted to question defendants' affiants regarding A.B.'s drawings and what actions they took in response to them, but plaintiff was not permitted to inquire regarding the specifics of any conversations.

¶ 25     Subject to the limitations referenced above, plaintiff thereafter deposed Jordahl, Allegretti, Pakkala, as well as Beyers, in early November 2022.

¶ 26     On November 17, 2022, plaintiff filed his response to defendants' motion to dismiss the second amended complaint. He raised three main arguments. First, plaintiff argued that the School Code offered no immunity to the school because it applied only to educators and not to the school,

itself, such that defendant's motion to dismiss count I (willful and wanton conduct against the School) should be denied. Second, plaintiff contended that the School Code only applied to plaintiff's claims concerning the alleged failure to supervise and failure to discipline, and that defendants' motion to dismiss "must be denied as to the question of whether the classroom was left unsupervised." Third, he argued that the affidavits and testimony of Allegretti, Jordahl, and Pakkala raised genuine issues of material fact that precluded dismissal.

¶ 27 Plaintiff supported his response to defendants' motion with counter-affidavits from Forowycz, Shelly Hooke (plaintiff's mother), and plaintiff.

¶ 28 Forowycz averred that her son, plaintiff, and A.B. were all students in Pakkala's classroom on December 11, 2012. Prior to that date, she "complained/inquired to school personnel often" regarding Pakkala's management of the classroom and, "upon information and belief, and based on [her] observations, there was a lack of leadership for the students in this classroom." She met with Pakkala in October 2012 for a parent-teacher conference, and Forowycz "specifically recall[ed]" telling Pakkala about A.B.'s drawings "that depicted inappropriate and disturbing subject matter," including penises and guns, and she asked Pakkala to look at the drawings. She further attested to the authenticity of an e-mail chain that she attached to her affidavit. The exhibit reflects that Forowycz sent an e-mail to Jordahl and Pakkala on December 12, 2012, which was the day after plaintiff's injury. Forowycz wrote in her e-mail that she "wanted to reiterate [her] concern about [A.B.'s] behavior, language drawings, etc," and that it was "very disturbing to [her] that [Forowycz's son] has mentioned on numerous occasions [A.B.] says, 'I could stab you with my Halo pencil' or whatever he is holding." Forowycz averred that she was unable to "recall specific other conversations or emails," but her use of the word "reiterate" indicated to her that she "did have additional oral or written communication with the school" prior to her December 12,

2012, e-mail. Forowycz further averred that Hooke gave her the e-mail chain, and that Forowycz no longer had access to her e-mail account because the hard drive on her computer crashed.

¶ 29    Hooke averred that after plaintiff's injury but before December 31, 2012, she met with Forowycz at her home. During the meeting, Forowycz "had in her possession, which [Hooke] observed, a file folder containing a drawing, and [Forowycz] gestured to the file folder indicating that the folder contained the back-and-forth communications with the school about her concerns."[3]

¶ 30    Plaintiff averred that at the time of the incident, A.B. was standing "more that an arm's length away" and that the pencil hit plaintiff's eye "with force." He also averred that A.B. was immature and "inappropriate in his conversations," and that A.B. "discussed video games that he played with content inappropriate for his age, including Borderlands, Skyrim, and Halo." Plaintiff also attested that Beyers "usually remained seated" and "had minimal interaction with the children," and that "[a]t the time of the incident, there was a shelving unit between [plaintiff's] location and the rest of the main classroom, which obstructed the view to or from the other part of the main classroom." Plaintiff also detailed the specifics of his injury.

---

[3]Hooke also attested that, during this meeting, Forowycz told her that A.B. threatened Forowycz' "son prior to the incident, claiming he was going to stab him with a Halo pencil," and that "she had been going 'around and around' communicating with Ann Jordahl *** about concerns she had over [A.B.'s] threats made to her son, including that [A.B.] was going to stab her son with a Halo pencil, and about concerns she had about a drawing made by [A.B.]." The circuit court struck this portion of her affidavit on hearsay grounds, and plaintiff expressly does not appeal the court's ruling striking this language from the affidavit.

¶ 31 The next day, plaintiff filed a motion for leave to file a third amended complaint. Specifically, plaintiff sought to add a count for a claim of right to recovery for his medical bills incurred as a minor pursuant to an assignment from his parents (the Hookes) or, in the alternative, to add the Hookes as party-plaintiffs so that they could seek recovery of the medical bills they paid on plaintiff's behalf, when he was a minor, pursuant to an assignment plaintiff made to the Hookes. Plaintiff elaborated that the basis for adding the count regarding plaintiff's recovery of his medical bills pursuant to an assignment from the Hookes, as well as the alternative count on behalf of the Hookes, was the fact that plaintiff was a minor at the time of the incident and, as a result, his parents were obligated to pay his medical bills under the Rights of Married Persons Act (750 ILCS 65/15 (West 2020)), which is commonly referred to as the Family Expense Act.[4] Plaintiff also sought to reinstate the direct negligence claim against the school that he previously opted to withdraw. Plaintiff attached his proposed third amended complaint, which contained the following counts: ordinary negligence against the school (count I), willful and wanton negligence against the school, Jordahl, and Pakkala (counts II, III, and IV, respectively), willful and wanton negligence premised on a theory of *respondeat superior* as to Jordahl and Pakkala (counts V and VI, respectively), and a "right to recover for [medical] bills paid" by the Hookes based on an assignment they executed in favor of plaintiff of the right to recovery (count VII). Expressly as

---

[4]The Family Expense Act "requires parents to pay for the 'expenses of the family,' which, according to judicial interpretation of the statute, includes medical expenses of their minor children." *Pirrello*, 2014 IL App (1st) 133964, ¶ 11. Parents can maintain a cause of action to recover payment of medical expenses from the tortfeasor who injured their child. *Cullotta*, 287 Ill. App. 3d at 975.

an alternative to count VII, plaintiff raised in count VIII a "right to recover for [medical] bills paid" by the Hookes based on an assignment of rights from plaintiff to the Hookes. In other words, plaintiff alleged a right to recover his medical bills incurred as a minor pursuant to an assignment from the Hookes, or, in the alternative, to add a count on behalf of the Hookes for their right to recover for the medical bills they paid on plaintiff's behalf when he was a minor.

¶ 32    On December 1, 2022, defendants filed a response in opposition to plaintiff's motion for leave to amend. They argued that plaintiff previously litigated his direct negligence claim against the School and that the additional counts plaintiff sought to add were untimely.

¶ 33    Plaintiff replied on November 19, 2022, arguing that the additional counts were not time barred and that he should be permitted to revive his direct negligence claim against the school because he previously withdrew the claim on his own accord and it was not "previously litigated," as defendants had argued.

¶ 34    The circuit court entered an order on December 20, 2022, denying plaintiff's motion for leave to file a third amended complaint "for the reasons set forth in defendants' motion." The court also cited the factors outlined in *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263 (1992) as a basis for denying plaintiff's motion, and it concluded that each factor disfavored allowing the amendment. The court gave defendants until January 17, 2023, to file a reply in support of their motion to dismiss, and it set the motion for hearing on January 24, 2023.

¶ 35    On January 17, 2023, defendants moved to strike the affidavits of Forowycz, Hooke, and plaintiff on the basis that they were insufficient under Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013). Defendants also filed a reply in support of their motion to dismiss, where they argued that the affidavits attached to their motion "remain[ed] unrefuted" and established that they had no reason to anticipate that A.B. posed a danger to students prior to December 11, 2012. Defendants

argued that, in the absence of prior knowledge, their conduct was not willful and wanton, which triggered the immunity provisions of the School Code.

¶ 36 On January 24, 2023, the circuit court heard oral argument and ruled on defendants' motion to strike plaintiff's affidavits and defendants' motion to dismiss. It struck certain statements in the affidavits prepared by Forowycz and Hooke, but left plaintiff's affidavit intact. In a separate written order, the court granted defendant's motion to dismiss pursuant to section 2-619(a)(9) of the Code and dismissed plaintiff's second amended complaint with prejudice. In explaining its ruling, the court stated that defendants' "affidavits establish[ed] that the School did not have any notice, actual prior notice that A.B. posed a threat to the plaintiff or to anyone else," and that those affidavits were unrefuted. The court reasoned that, therefore, the burden shifted to plaintiff "to establish that the affirmative matter is unfounded or involves an issue of material fact," but plaintiff failed to satisfy that burden because, "again, the affidavits aren't refuted." The court explained that it would have concluded that defendants lacked prior knowledge that A.B. posed a threat to other students even if it had not stricken portions of the counter-affidavits. Additionally, the court stated that defendants' evidence established that a teacher aide and a Spanish teacher were present in the classroom at the time of plaintiff's injury, and the classroom was therefore not unsupervised.

¶ 37 Based on defendant's unrefuted lack of notice that A.B. posed a threat, the circuit court found that defendants had not engaged in willful and wanton misconduct and held that defendants were therefore entitled to immunity under the School Code, which the court described as granting immunity to educators and schools from ordinary negligence in supervising school activities. It explained that "willful and wanton conduct *** ha[d] not been shown here, and so this immunity indeed constitute[d] affirmative matter *** defeating the claims brought by the plaintiff." In short,

the court concluded that defendants were entitled to immunity under section 24-24 of the School Code because willful and wanton conduct had not been shown.

¶ 38    Plaintiff timely filed a notice of appeal.

¶ 39                                II. ANALYSIS

¶ 40    Plaintiff argues on appeal that the trial court erred in: (1) limiting the topics on which plaintiff could depose defendants' affiants in support of their motion to dismiss, (2) striking portions of the affidavits prepared by Forowycz and Hooke in support of plaintiff's opposition to defendants' motion to dismiss, (3) granting defendants' motion to dismiss; and (4) denying plaintiff's motion for leave to file a third amended complaint.

¶ 41                    A. Restrictions on the Scope of Inquiry at Deposition

¶ 42    Plaintiff's first argument is that the circuit court erred in limiting the topics on which he could depose defendants' affiants as set forth in its November 1, 2022, discovery order.  Like in his motion to clarify the parameters for deposition, plaintiff asserts on appeal that he wished to depose defendants' affiants regarding the subject matter of their affidavits—not just as they pertained to any behavior, drawings, threats, language, or other concerning issues they were aware of regarding A.B. as directed toward students and teachers at the school—but also regarding "any concerns they were aware of generally with [A.B.]."  In other words, plaintiff wished to question them regarding "any information they had about [A.B.'s] behavior that was concerning[,] generally[,] and that arguably should have been addressed by the *** School prior to the subject incident."  Plaintiff also asserts that he desired to question the affiants regarding conversations they had with others after they learned of A.B.'s concerning behavior, drawings, threats, or language, but he was prohibited from doing so by the court's ruling barring him from asking about the specifics of any conversations they had in response to A.B.'s concerning drawings or threats.

In plaintiff's view, any information regarding defendants' knowledge of A.B.'s *general* behavior was "relevant and material" to plaintiff's theory of the case, and the court's ruling barring inquiry into these aspects of the affiants' knowledge was erroneous.

¶ 43     Defendants respond that the circuit court acted within its discretion because the discovery order balanced the privacy rights of A.B., who is not a party to the case, with plaintiff's need to inquire whether the affiants possessed knowledge prior to the incident that A.B. posed a threat to others.  They emphasize that plaintiff was able to question defendants' affiants "on the critical issues regarding A.B.," namely "whether he had been reported as a physical threat to others prior to the incident."  Moreover, they argue that A.B.'s general behavior and drawings were irrelevant, but rather, "[t]he only relevant issue regarding notice is if the school was advised prior to the *** incident that other parents or students felt that [A.B.] posed a danger to the safety of other children at the school."

¶ 44     The discovery process is "a mechanism for the ascertainment of truth, for the purpose of promoting either a fair settlement or a fair trial." *Ostendorf v. International Harvester Co.*, 89 Ill. 2d 273, 282 (1982).  The main goal of discovery is to encourage complete disclosure (*Central Illinois Light Co. v. Home Insurance Co.*, 342 Ill. App. 3d 940, 962 (2004)), and the supreme court rules that govern discovery procedures are designed to be flexible and adaptable to the infinite variety of cases and circumstances appearing in the trial courts (*Kaull v. Kaull*, 2014 IL App (2d) 130175, ¶ 29).

¶ 45     Supreme Court Rule 201(b)(1) (eff. July 1, 2014) provides that "a party may obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking disclosure or of any other party."  For purposes of this rule, relevance is interpreted broadly to include "not only that

which is admissible at trial, but also that which leads to admissible evidence." *Salvator v. Air & Liquid Systems Corp.*, 2017 IL App (4th) 170173, ¶ 65.

¶ 46 While the scope of permissible discovery is broad, it is not limitless. The court must exercise its discretion and balance "the needs of truth and excessive burden to the litigants." *Y-Not Project, Ltd. v. Fox Waterway Agency*, 2016 IL App (2d) 150502, ¶ 43 (quoting *Welton v. Ambros*, 351 Ill. App. 3d 627, 633 (2004)). Supreme Court Rule 201 provides the trial court with broad authority to supervise all or any part of the discovery process. Trial courts "are vested with considerable discretion to supervise the course of discovery as the court deems appropriate." *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 223 (2000) (citing *Atwood v. Warner Electric Brake and Clutch Co.*, 239 Ill. App. 3d 841, 88 (1992)). In the context of discovery depositions, the deponent may be examined regarding any matter subject to discovery. Ill. S. Ct. R. 206(c)(1) (eff. Oct. 1, 2021).

¶ 47 In general, courts review discovery orders for an abuse of discretion. *Jiotis v. Burr Ridge Park District*, 2014 IL App (2d) 121293, ¶ 22. See also *Payne v. Hall*, 2013 IL App (1st) 113519, ¶ 13 (stating that "[t]rial courts are afforded wide latitude in determining the permissible scope of discovery, and their rulings on discovery matters are generally reviewed for an abuse of discretion"). "A court abuses its discretion only if it acts arbitrarily, without the employment of conscientious judgment, exceeds the bounds of reason and ignores recognized principles of law; or if no reasonable person would take the position adopted by the court." *Id.* ¶ 12.

¶ 48 Notwithstanding plaintiff's arguments on appeal, we are unable to evaluate whether the November 1, 2022, discovery order represented an abuse of the trial court's discretion because plaintiff has not provided a sufficient record for us to do so. Pertinent to this issue, the record includes plaintiff's "motion to clarify parameters, if any, for depositions of affiants," defendants'

response, and the November 1, 2022, discovery order, but it lacks a transcript from the November 1, 2022, proceedings, or an acceptable substitute, such as a bystander's report or an agreed statement of the facts as permitted by Rules 323(c) and (d). Ill. S. Ct. R. 323 (c), (d) (eff. July 1, 2017). "[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with the law and had a sufficient factual basis." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Id*. at 392. When the record on appeal is incomplete, "a reviewing court should actually 'indulge in every reasonable presumption favorable to the judgment from which the appeal is taken, including that the trial court ruled or acted correctly.' " *Smolinski v. Vojta*, 363 Ill. App. 3d 752, 757-58 (2006), quoting *People v. Majer*, 131 Ill. App. 3d 80, 84 (1985).

¶ 49      In this case, the record shows that the parties were at an impasse regarding the permissible scope of inquiry related to the anticipated discovery depositions of defendants' affiants, and plaintiff prompted the court to resolve the dispute by moving to "clarify" the parameters for deposition, which resulted in the discovery order that plaintiff now challenges. The order states that the matter was fully briefed, that the court heard oral argument, and that the court was "fully advised in the premises." It then lists various parameters for, or limitations on, the questions plaintiff was permitted to ask of defendants' affiants. However, it contains neither express written findings nor an explanation setting forth the reasons the court identified to impose the parameters that plaintiff now complains of. Plaintiff's claim largely depends on what transpired during the November 1, 2022, hearing, what arguments the parties made, and the reasons the court provided for entering the order. Without any record of the basis for the court's ruling, we are unable to

determine whether the order constituted an abuse of the trial court's discretion, and we therefore must presume that the court acted in conformity with the law. *Foutch*, 99 Ill. 2d at 393. See *Illinois Founders Insurance Co. v. Williams*, 2015 IL App (1st) 122481, ¶ 54 ("[w]e cannot divine the trial court's reasoning in denying defendant's motion and cannot determine whether that decision constituted an abuse of discretion"). The presumption is especially strong where, as here, the order states that the court was fully advised in the premises. *Maniscalco v. Porte Brown, LLC*, 2018 IL App (1st) 180716, ¶ 30. Plaintiff's claim therefore fails on this basis alone.

¶ 50    *Foutch* principles aside, plaintiff's claim would still fail. At its core, plaintiff's argument is simply that the circuit court erred by barring him from questioning defendants' affiants on matters that were "relevant and material" during their depositions. Plaintiff's argument is shortsighted because it overlooks the fact that, even if information is relevant, it need not be produced during discovery if the burden of producing it outweighs the benefit. *Carlson v. Jerousek*, 2016 IL App (2d) 151248, ¶ 39. "The legitimate privacy concerns of the responding party are one of the burdens that a court can and should consider." *Id.*

¶ 51    During the discovery process, as well as in response to plaintiff's motion to clarify, defendants consistently invoked A.B.'s right to privacy on the basis that he was a minor at the time of the incident, was not a party to the litigation, and had not consented to the disclosure of any of his private information. Defendants' concern for A.B.'s privacy rights formed the crux of their argument and perhaps factored into the circuit court's analysis, but plaintiff's opening brief does not address defendants' arguments regarding A.B's right to privacy or the court's probable concerns for the same. Plaintiff, in his reply brief, acknowledges these points but asserts that defendants were not specific enough in identifying which constitutional provisions should have barred disclosure. This sidesteps the issue because the burden of persuasion remains with the

appellant—plaintiff in this matter—regarding his claim of error. *Yamnitz v. William J. Diestelhorst Co., Inc.*, 251 Ill. App. 3d 244, 250 (1993). Plaintiff does concretely argue that schools are not covered entities and that educational records are not protected health information under HIPAA but, as referenced above, we have no idea whether HIPAA considerations guided the court's analysis due to the lack of an adequate record. Plaintiff has not carried his burden of persuasion that the November 1, 2022, discovery order was an abuse of discretion, and his claim therefore fails.

¶ 52        B. Misdesignation of Summary Judgment Motion as a Motion to Dismiss

¶ 53    Plaintiff next contends that the circuit court erred in granting defendant's section 2-619(a)(9) motion and dismissing his second amended complaint with prejudice. Section 2-619 of the Code allows a defendant to obtain an involuntary dismissal of a claim or action based upon certain specified defenses or defects in the complaint. 735 ILCS 5/2-619 (West 2020). Its purpose "is to dispose of issues of law and easily proved issues of fact at the outset of litigation." *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). In this respect, a section 2-619 motion "is similar to a summary judgment motion because [it] *** essentially amounts to a summary judgment procedure" (*Malanowski v. Jabamoni*, 293 Ill. App. 3d 720, 724 (1997)) and, in ruling on either motion, we "must determine whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether the dismissal is proper as a matter of law." *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 254 (2004).

¶ 54    A section 2-619 motion to dismiss admits the legal sufficiency of the complaint and all well-pleaded facts and reasonable inferences therefrom (*Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 31) but raises certain defects, defenses, or other affirmative matter appearing on the face of the complaint or established by external submissions that defeat

the action (*CACH, LLC v. Moore*, 2019 IL App (2d) 180707, ¶ 11). A defendant is essentially saying, "yes, the complaint was legally sufficient, but an affirmative matter exists that defeats the claim." *Winters v. Wangler*, 386 Ill. App. 3d 788, 792 (2008). In ruling on a section 2-619 motion to dismiss, the circuit court must interpret all the pleadings and supporting documents in the light most favorable to the nonmoving party. *Hubble v. Bi-State Development Agency of the Illinois-Missouri Metropolitan District*, 238 Ill. 2d 262, 267 (2010).

¶ 55 Here, defendants were granted dismissal based upon section 2-619(a)(9) of the Code, which permits involuntary dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2020). Again, defendants moved to dismiss plaintiff's second amended complaint because the affidavits attached to the motion established that defendants lacked any knowledge prior to the incident that A.B. posed a threat to students, and they were therefore immune under the School Code. Based on our examination of the second amended complaint in tandem with defendants' motion to dismiss, however, it is readily apparent that defendants' alleged lack of notice is not "affirmative matter" as contemplated in section 2-619(a)(9).

¶ 56 The second amended complaint contained a number of well-pleaded facts that, for purposes of section 2-619, defendants were deemed to have admitted. *Reynolds*, 2013 IL App (4th) 120139, ¶ 31. The complaint alleged that, prior to December 11, 2012, the School possessed written records documenting that A.B.: (1) was physically abusive to other students, and (2) had verbally threatened other students. It also alleged that, prior to the incident: (3) A.B. threatened to stab a student with a Halo pencil, and (4) the parent of the student whom A.B. threatened to stab notified Jordahl of the threat. The complaint further alleged that, immediately before plaintiff sustained

his injury, Pakkala left her classroom unsupervised, which provided A.B. with an opportunity to harm plaintiff.

¶ 57    Rather than accept these well-pleaded facts as true for purposes of the motion to dismiss, defendants offered contrary evidence to deny these essential allegations. Specifically, Allegretti, who is the current executive director of the school, averred that she had access to student records that predated the incident but that, following her review, the school did not possess any records regarding A.B. ever being physically abusive to another student or threatening to abuse any student. Similarly, she denied that the School possessed documents reflecting any incident where A.B. threatened to harm a student with a Halo pencil. She also averred that, per her review of the documentation regarding the incident, the classroom was supervised because Beyers was present.

¶ 58    Jordahl, the executive director of the School at the time of the incident, likewise disputed in her affidavit the complaint's well-pleaded facts. She attested that she was unaware of any incidents or reports by a parent that A.B. threatened to stab another student with a Halo pencil or had threatened any student at the school, and she was similarly unaware of any reports that A.B. had harmed a student, aside from plaintiff on the date of the incident. In other words, Jordahl expressly disputed plaintiff's well-pleaded allegation that a parent of a student whom A.B. had threatened to stab with a Halo pencil had informed her of that threat. Jordahl similarly denied that the classroom was unsupervised because Beyers was present.

¶ 59    Pakkala averred that she left the classroom in the care of two staff members, including Beyers, such that the students "were never unsupervised *** including at the moment of the alleged occurrence." She also attested that she was unaware of prior incidents or reports by any parent regarding A.B. harming or threatening another student, including with a Halo pencil.

¶ 60    Defendants asserted that these affidavits constituted "affirmative matter" under section 2-619(a)(9), and that plaintiff's allegations that defendants possessed records indicating that A.B. had verbally and physically abused students and that Jordahl was, prior to the incident, made aware of such threats, "must be disregarded."

¶ 61    It is well established that "affirmative matter" means "any defense other than a negation of the essential allegations of the plaintiff's cause of action." *Kedzie and 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill, 2d 112, 116 (1993). See *In re Estate of Schlenker*, 209 Ill. 2d 456, 461 ("[t]he phrase 'affirmative matter' refers to something in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint"). Affirmative matter does not include evidence upon which defendant expects to contest a well-pleaded fact in the complaint. *Reynolds*, 2013 IL App (4th) 120139 (2013). See *Malanowski,* 293 Ill. App. 3d at 723 ("Evidence which merely refutes a well-pleaded fact in the complaint is not an 'affirmative matter' ").

¶ 62    Here, rather than present "affirmative matter" under section 2-619(a)(9), defendants' motion and the attached affidavits challenged plaintiff's well-pleaded facts. In other words, defendants acknowledged the well-pleaded facts in the complaint but presented affidavits that, in essence, replied "not true." This was improper, because "[s]ection 2-619(a)(9) does not authorize the defendant to submit affidavits or evidentiary matter for the purpose of contesting the plaintiff's factual allegations and presenting its version of the facts." *Reynolds,* 2013 IL App (4th) 120139, ¶ 34. Section 2-619(a)(9) of the Code "is not a proper vehicle to contest factual allegations; nor does it authorize a fact-based 'mini-trial' on whether plaintiff can support his allegations." *Id*. ¶ 42. It is also not "a shortcut to resolve factual issues about the veracity of plaintiff's essential allegations." *Id*. ¶ 53. Contrary to defendants' arguments in the court below, these affidavits do

not constitute affirmative matter under section 2-619(a)(9). See *Reynolds*, 2013 IL App (4th) 120139, ¶ 53 ("When the defendant submits a 'Not true' motion, defendant's burden of production has not been met—there is no affirmative matter—and the burden does not shift to the plaintiff to refute the defendant's factual allegations contained in the motion.").

¶ 63    The motion to dismiss and the affidavits attached to it make clear that defendants wished to challenge the factual sufficiency of plaintiff's well-pleaded allegations regarding notice and the inference that they knew or should have known before December 11, 2012, that A.B. was dangerous. The proper vehicle would have been a motion for summary judgment pursuant to section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2020)). See *Reynolds*, 2013 IL App (4th) 120139, ¶ 54 ("[w]here the defendant uses the material to support its version of the facts, point out the factual deficiencies in plaintiff's case, or allege plaintiff cannot prove his case, it is apparent the defendant is merely challenging the truthfulness of the plaintiff's factual allegations and a fact-based motion such as a section 2-1005 motion should be used"). Meticulous motion practice and the Code dictate that motions should be properly designated. *Id.* ¶ 51.

¶ 64    The misdesignation of a motion is not always fatal to the rights of the moving party, however. *Andrews v. Marriott International, Inc.*, 2016 IL App (1st) 122731, ¶ 17. "When a litigant files a section 2-619(a)(9) motion that is mistakenly based on affidavits or evidence that do nothing more than negate the essential allegations of a complaint, courts have sometimes construed those mischaracterized motions as motions for summary judgment, particularly when the trial court and parties treat them as such." *Professional Solutions Insurance Co. v. Karuparthy*, 2023 IL App (4th) 220409, ¶ 77 (citing *Howle v. Aqua Illinois, Inc.*, 2012 IL App (4th) 120207, ¶¶ 31-39). Courts may do so because, although section 2-619(a)(9) is no substitute for a motion for summary judgment, the motions "are similar in that a fact motion under section 2-619

essentially amounts to a summary judgment procedure." *Malanowski*, 293 Ill. App. 3d at 724. See

*Kedzie & 103rd Currency Exchange, Inc.*,156 Ill. 2d at 116. Courts look to the substance of the

motion, rather than its form or title, to determine which section of the Code applies. *Malanowski,*

293 Ill. App. 3d at 724. Reversal due to a misdesignation is required only where the nonmovant

has been prejudiced by the error. *Id.* (quoting *Scott Wetzel Services v. Regard*, 271 Ill. App. 3d

478, 481 (1995). "If the defendant improperly submits a motion pursuant to section 2-619 that

argues the plaintiff cannot prove his case, and the plaintiff is not prejudiced by the defendant's

misdesignation, the motion may be treated as a summary judgment motion." *Reynolds*, 2013 IL

App (4th) 120139, ¶ 54 (citing *Malanowski*, 293 Ill. App. 3d at 724).

¶ 65    Plaintiff has suffered no prejudice in this instance. As noted, defendants moved for

dismissal on the basis that the affidavits prepared by Allegretti, Jordahl, and Pakkala established a

lack of prior notice that A.B. posed a threat to other students and that, in the absence of notice,

their conduct was not willful and wanton. Defendants also argued that the classroom was not

unsupervised because Beyers was present. These factual issues were both narrow and specific,

and plaintiff was permitted to conduct adequate written and oral discovery to test defendants'

assertions before being required to respond to the motion. See *Malanowski*, 293 Ill. App. 3d at

724 (holding the plaintiff suffered no prejudice or unfair surprise by the misdesignation because

the issue was "narrow [and] clearly defined," and plaintiff issued written discovery on the matters

raised in the affidavit attached to the motion). In April 2022, all three defendants answered

plaintiff's interrogatories and plaintiff's requests for production of documents—meaning plaintiff

received six written discovery responses in total. Plaintiff filed no motion contesting the adequacy

of any response. Then, in early November 2022, plaintiff deposed Allegretti, Jordahl, and Pakkala

regarding the substance of their affidavits (albeit subject to the limitations imposed by the court in

its November 1, 2022, order). Plaintiff also deposed Beyers, who was the teacher aide that defendants asserted was present in the classroom at the time of the incident. Plaintiff acknowledges, in a separate argument in his appellate brief, that he "had an opportunity to investigate the facts of the case, take depositions of parties and witnesses, and perform legal research and investigation in preparation for drafting a Response to Defendants' Motion to Dismiss." Plaintiff therefore had the benefit of extensive written and oral discovery before responding to defendant's motion.

¶ 66    Plaintiff ultimately filed his response on November 17, 2022, which was only days after the depositions were completed. Plaintiff made no argument that defendants' motion failed to raise affirmative matter. Instead, his response bore the hallmarks of a response in opposition to a motion for summary judgment. Plaintiff argued, among other points, that defendants' motion was unfounded because there were "material and genuine disputed questions of fact *** raised by [defendants'] affidavits," and he highlighted various aspects of the affidavits and testimony of Allegretti, Jordahl, and Pakkala, in support. These are arguments that we would typically expect to see in response to a motion for summary judgment. Plaintiff also attached counter-affidavits executed by Forowycz, Hooke, and plaintiff, which he similarly argued "presented material and genuine disputed questions of fact." See *Purtill v. Hess*, 111 Ill. 2d 229, 241 (1986) ("facts contained in an affidavit in support of a motion for summary judgment which are not contradicted by counteraffidavit are admitted and must be taken as true for purposes of the motion"). Plaintiff ostensibly attached these counter-affidavits so that the assertions in the affidavits supporting defendants' motion would not be deemed admitted and accepted as true.

¶ 67    As noted, the circuit court dismissed plaintiff's second amended complaint and emphasized that the affidavits attached to defendants' motion "establish[ed] that the school did not have any

notice, actual prior notice that A.B. posed a threat to the plaintiff or to anyone else," as well as that "the classroom was supervised *** [because] there was an aide and a Spanish teacher who were present." In the court's view, these affidavits were "unrefuted," and it would have so ruled even if it had not stricken portions of plaintiff's counter-affidavits. These determinations are appropriate in the context of rulings involving motions for summary judgment.

¶ 68     Plaintiff's arguments on appeal largely mirror those he made before the trial court. He contends that he "presented material and genuine disputed questions of fact by way of the affidavits of Ann Forowycz, Shelly Hooke, and plaintiff, as well as by way of the deposition testimony of Defendant Jordahl, Defendant Pakkala, Hope Allegretti, Barbara Beyers, and Ann Forowycz." He maintains that "[t]his elicited evidence created a material and genuine disputed question of fact on the issues of this case," and he even acknowledges that, "[a]s with a motion for summary judgment, a motion to dismiss requires the same analysis of factual questions by the trier of fact regarding the information in defendants' possession."

¶ 69     In light of the above, we find no prejudice in the misdesignation of defendants' motion, and we construe it as a motion for summary judgment, which is consistent with the substantive arguments raised by the parties in the court below and on appeal, as well as with the circuit court's analysis that preceded the dismissal of plaintiff's second amended complaint. *Professional Solutions Insurance Co.*, 2023 IL App (4th) 220409, ¶ 77; *Reynolds*, 2013 IL App (4th) 120139, ¶ 53; *Malanowski*, 293 Ill. App. 3d at 724; *Scott Wetzel Services*, 271 Ill. App. 3d at 481. Therefore, we shall construe defendants' motion as a motion for summary judgment.

¶ 70                                  C. Summary Judgment Considered

¶ 71     Section 2-1005 of the Code provides for summary judgment when the pleadings, depositions, and admissions on file, together with the affidavits, show that there is no genuine issue

as to any material fact and that the moving party is entitled to judgment as a matter of law. *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755 (2005). In determining whether a genuine issue of material fact exists, the trial court must construe the pleadings and evidentiary material in the record strictly against the moving party and liberally in favor of the nonmoving party. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). The court "may not weigh evidence set forth in opposing affidavits, thereby denying a right to a jury trial." *In re Estate of Ciesiolkiewicz*, 243 Ill. App. 3d 506, 510 (1993). The plaintiff is not required to prove his case at the summary judgment stage, but rather, must bring forth facts showing that he is entitled to judgment. *Hammer v. Barth*, 2016 IL App (1st) 143066 ¶ 14.

¶ 72     Once a defendant has met his initial burden of production by affirmatively showing that an element of plaintiff's case must be resolved in defendants favor, the burden of production shifts to the plaintiff to demonstrate the existence of an unresolved issue of material fact that precludes summary judgment. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The plaintiff must then produce counter-affidavits or other material to contradict the movant's materials which presents a factual basis that arguably entitles plaintiff to judgment, and thus showing the existence of a genuine issue of material fact. *Cox v. U.S. Fitness, LLC*, 2013 IL App (1st) 122442, ¶ 27.

¶ 73     Summary judgment is a drastic means of resolving litigation and should be granted only when the right of the moving party is clear and free from doubt. *Buchaklian v. Lake County Family Young Men's Christian Ass'n*, 314 Ill. App. 3d 195, 199 (2000). We review *de novo* a trial court's decision to enter summary judgment, meaning we give no deference to the trial court and consider anew the pleadings, affidavits, depositions, admissions, and exhibits on file to determine whether the trial court's decision was correct. *Jackson v. Graham*, 323 Ill. App. 3d 766, 779 (2001).

¶ 74    Plaintiff's second amended complaint, which is the subject of this appeal, is comprised of four willful and wanton negligence counts. It alleges willful and wanton negligence against the school, Jordahl, Pakkala, and the school under a theory of *respondeat superior* based upon the conduct of Pakkala and Jordahl. Plaintiff's injury occurred when A.B. paired a pencil with a rubber band, which he used to propel the pencil toward plaintiff. The second amended complaint alleges that defendants knew or should have known that A.B. posed a threat to other students because the School possessed, prior to plaintiff's injury, written records documenting that A.B. had verbally threatened and physically abused other students at the school, that A.B. had threatened to stab a student with a Halo pencil, and that the mother of the student alleged to have been threatened had informed Jordahl of that threat. Thus, the lynchpin of the complaint is that A.B. posed a known danger that defendants failed to protect him from. The trial court entered what amounts to a summary judgment order in favor of defendants on the basis that there was no genuine issue of material fact that defendants lacked notice prior to plaintiff's injury that A.B. posed a threat to other students and, in the absence of such notice, their conduct was not willful and wanton, and they were thus entitled to immunity under section 24-24 of the School Code.

¶ 75    Illinois law does not recognize willful and wanton conduct as an independent tort, but rather, it is regarded as an aggravated form of negligence. *Mack Industries, Ltd. v. Village of Dolton*, 2015 IL App (1st) 133620, ¶ 35; *Jane Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 19. To show willful and wanton negligence in the supervision of school children, the plaintiff must "show that the teacher or school was aware or should have known that the absence of supervision posed a high probability of serious harm or an unreasonable risk of harm." *Jackson v. Chicago Board of Education*, 192 Ill. App. 3d 1093, 1100 (1989). The general allegation that a teacher or school should have known that the plaintiff would be harmed

absent adult supervision is insufficient. *Id.* For an act to constitute willful and wanton misconduct, it requires more than just inadvertence or brief lapses in attention, which might be considered ordinary negligence. *Oelze v. Score Sports Venture, LLC*, 401 Ill. App. 3d 110, 122 (2010). "[A] teacher's mere act of leaving children unsupervised will not be sufficient to establish willful and wanton misconduct." *Jackson*, 192 Ill. App. 3d at 1100. Rather, "[t]he party doing the wanton act or failing to act 'must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury.' " *Id.* at 122-23 (quoting *Bartolucci v. Falleti*, 382 Ill. 168, 174 (1943). Whether specific acts amount to willful and wanton misconduct is generally a question of fact reserved for the jury to decide (*id.* at 123), but a court may determine that issue as a matter of law if the evidence, when viewed in the light most favorable to the nonmoving party, overwhelmingly favors the movant and no contrary determination based on the evidence could stand (*Wade v. City of Chicago*, 364 Ill. App. 3d 773, 781 (2006)).

¶ 76    Based on our review of the record, and construing the pleadings, affidavits, and deposition testimony in the light most favorable to plaintiff, as we must, we agree that there is no genuine issue of material fact that defendants lacked notice of, and had no reason to anticipate, A.B.'s potential to harm other students. Defendants' motion was supported by three affidavits, namely from Allegretti, Jordahl, and Pakkala. Allegretti, the current executive director of the School, is the only affiant who is presently affiliated with the school. Pakkala and Jordahl are no longer employed by the school and therefore lacked access to the school's records when they prepared their affidavits.

¶ 77    Allegretti attested that she had access to student records that predated the December 11, 2012, incident, including "records that exist regarding A.B." She reviewed A.B.'s student records,

but her search yielded no reports prior to the incident that A.B. had physically abused another student or had threatened to harm any student. Similarly, she averred that the School did not possess records concerning an incident where A.B. threatened to harm another student with a Halo pencil. She also attested that the School's documentation related to the incident established that Beyers was in the classroom when plaintiff was injured.

¶ 78 Jordahl attested that she was the executive director of the school when the incident occurred, that she was unaware of any reports prior to plaintiff's injury that A.B. had either physically harmed or verbally threatened harm upon any student at the school, that no parent had reported to her that A.B. had threatened any fellow student, and that Beyers was present in the classroom at the time of the incident.

¶ 79 Pakkala attested that she was the teacher assigned to plaintiff's classroom. She was unaware of any reports or incidents prior to the incident that A.B. had harmed or threatened to harm any student at the school, and she was unaware of any incidents or reports by any parent that A.B. had threatened to harm any student with a Halo pencil. She further averred that when she stepped out of the classroom immediately before plaintiff was injured, Beyers and a Spanish teacher remained in the room.

¶ 80 Plaintiff argues on appeal that these affidavits are "of no consequence" and "should be given no weight." He emphasizes that Allegretti acknowledged during her deposition that her statements regarding a lack of notice of A.B.'s dangerousness was based on records "that exist" and not on records that perhaps existed in 2012. He also asserts that neither Allegretti nor Jordahl have personal knowledge of the circumstances surrounding the incident, including the level of classroom supervision, because neither individual was in the classroom when plaintiff was injured. Rather, Allegretti's affidavit was based on her review of A.B.'s student file and documentation

related to the incident, and Jordahl's affidavit was based on her memory of the event, which had occurred nearly ten years prior, but she did not investigate whether there were any reports concerning A.B.'s dangerousness prior to the incident that she may have forgotten. In a similar vein, plaintiff asserts that the statements in Pakkala's affidavit pertaining to A.B.'s prior incidents of threats or violence were "based on her memory [but] *** she did not go back to review any documentation prior to making that statement."

¶ 81    Plaintiff's argument that these affidavits are "of no consequence and should be given no weight" is incongruent. Allegretti's affidavit plainly was not offered as a first-hand account of the incident, but rather, was based on her personal knowledge of the records maintained by the School, which she had access to as the school's executive director. The affidavit was offered to contradict plaintiff's allegations that the school possessed records documenting that, prior to the incident, A.B. had verbally threatened and physically abused other students, including an incident where A.B. allegedly threatened another student with a Halo pencil. In light of the fact that the parties, and indeed the circuit court, effectively construed defendants' motion to dismiss as a motion for summary judgment, the use of Allegretti's affidavit to challenge plaintiff's well-pleaded allegations was proper, as discussed above. See *Reynolds*, 2013 IL App (4th) 120139, ¶ 54 (stating that a fact-based motion, such as a motion for summary judgment, may be used to contest the truthfulness of a complaint's allegations). The same is true for the affidavits offered by Jordahl and Pakkala. Plaintiff insinuates evidence spoliation and suggests that Allegretti's affidavit should not be believed because, during her deposition, she confirmed that her affidavit was based on her review of School records " 'that exist' currently" rather than records that perhaps existed "at the time of the incident 10 years ago." The argument is entirely speculative and is insufficient to demonstrate the existence of a factual dispute, whether material or otherwise.

¶ 82    Plaintiff's grievances regarding the affidavits prepared by Jordahl and Pakkala are similarly meritless.  Jordahl denied knowledge of any incidents or reports by any parent that A.B. had threatened to stab a student with a Halo pencil, and she lacked knowledge that A.B. had threatened to harm or had actually harmed any student other than plaintiff.  Thus, her affidavit controverts plaintiff's claims that, prior to the incident, a parent had informed her that A.B. threatened their child with a Halo pencil and that the School had received reports that A.B. was a danger to other students.  Likewise, Pakkala attested that she lacked knowledge of prior incidents or reports by a parent that A.B. had harmed or threatened to harm a student, such as with a Halo pencil.  That Jordahl and Pakkala prepared their affidavits based on their memory and without the aid of school records that they no longer had access to as former employees is hardly surprising given that plaintiff was eleven years old at the time of the incident, but he waited until four days before his twentieth birthday to file his initial complaint.  Plaintiff offers no suggestion as to how these affiants could have reviewed school records that either do not exist or they lack access to in preparation of their affidavits.

¶ 83    We would also be remiss if we did not point out that plaintiff did not move to strike, either in whole or in part, any of the affidavits attached to defendants' motion in the trial court.  It therefore stands to reason that plaintiff was satisfied that they conformed with the technical requirements set forth in Supreme Court Rule 191(a), which governs the requirements of affidavits in support of motions for summary judgment under section 2-1005 of the Code and motions for involuntary dismissal under section 2-619 of the Code.  See *McBride v. Commercial Bank of Champaign*, 101 Ill. App. 3d 760, 763 (1981) (holding plaintiff forfeited his claims that defendants' affidavits did not conform to Rule 191(a) by failing to bring the court's attention to his motion to strike and failing to press the court for a ruling on the motion).  See also *Cordeck*

*Sales, Inc. v. Construction Systems, Inc.*, 382 Ill. App. 3d 334, 383 ("it is the burden of the party objecting to the sufficiency of a Rule 191(a) affidavit to challenge the affidavit in the trial court and obtain a ruling thereon"). Plaintiff cannot now claim, on appeal, that the trial court erred in considering these affidavits when he did not, either in a separate motion to strike or in his response in opposition to defendants' motion to dismiss, request that the court strike any portion of them.

¶ 84 Plaintiff asserts in his briefs that the deposition testimony of defendants' affiants, as well as Beyers, the teacher aide who was present in the classroom when plaintiff was injured, establishes a genuine issue of material fact. The assertion, however, is a naked conclusion that is bereft of any meaningful argument or analysis. Plaintiff provides, in a serial fashion, a summary of each individual's deposition testimony and then concludes that it shows the existence of a genuine issue of material fact.

¶ 85 Plaintiff highlights the following testimony in support: (1) Allegretti searched the e-mail accounts of Jordahl and Pakkala for any communications with Forowycz, but she did not find any. Allegretti's search for records regarding any threats or physical violence from A.B. would not have turned up verbal communications, and she did not know whether such verbal communications regarding A.B. ever took place; (2) Jordahl testified that she learned of A.B.'s drawing, which she described as "a projectile of some sort," in October 2012. She discussed the drawing with A.B.'s mother, and no other actions were taken. She was not advised prior to December 11, 2012, that A.B. had physically threatened or had actually harmed other students; (3) Pakkala testified that, before plaintiff was injured, she had a meeting with A.B.'s mother to discuss A.B.'s drawing. Prior to the incident, Forowycz did not voice any concerns to Pakkala about A.B. threatening her son. Rather, Forowycz' concerns were limited to how she managed her classroom, in that Forowycz "wanted it to be more like public school and that we should have more parties and certain specific

lessons." Pakkala could not recall any instance where Forowycz complained about Pakkala's control over the classroom; and (4) Beyers testified that she was a teacher's assistant assigned to Pakkala's classroom. At the time of the incident, Beyers was seated on a stool inside the door to the classroom as she had been instructed to do. She could see plaintiff and A.B., but their backs were facing her. She did not observe the incident and did not know how it happened. After learning plaintiff was injured, Beyers escorted him to the school nurse. Beyers testified that Pakkala was not in the classroom when plaintiff was injured, and she could not recall whether a Spanish teacher was also in the room.

¶ 86    Contrary to plaintiff's unsubstantiated and conclusory position, none of the above testimony, when viewed in the light most favorable to plaintiff, raises a genuine issue of material fact that defendants were on notice prior to December 11, 2012, that defendants knew or should have known that A.B. posed a danger to other students. Plaintiff fails to even identify, in his summary of the deposition testimony provided by Allegretti and Beyers, what the purported disputed issues of fact are. The only specificity offered by plaintiff concerns Jordahl's testimony, which he points to as showing the existence of a genuine issue of material fact regarding "the information in [d]efendants' possession prior to the incident." He emphasizes Jordahl's testimony that: (1) Pakkala told her in October 2012 about Forowycz' concerns regarding a drawing made by A.B.; (2) Forowycz may have told Pakkala, prior to the incident, about A.B.'s threats against her son, but she did not know for sure; (3) she believed Forowycz told Pakkala about her concerns regarding A.B.'s behavior prior to the incident; and (4) Pakkala exchanged e-mails with Forowycz in response to Forowycz' concerns. Plaintiff apparently relies on Jordahl's understanding of communications between Pakkala and Forowycz to create a genuine issue of material fact, but the argument is misguided because Jordahl's testimony in this regard was based on a game of

telephone played nearly ten years before her deposition. "It is axiomatic that mere guesswork or speculation is insufficient to create a genuine issue of material fact to survive a motion for summary judgment." *Kasper v. McGill Management, Inc.*, 2019 IL App (1st) 181204, ¶ 29. In any event, Jordahl's hunches were not borne out by the testimony offered by either Forowycz or Pakkala.

¶ 87    Plaintiff alleged that defendants knew that A.B. posed a threat of physical harm to students because, among other reasons, a parent notified Jordahl prior to December 11, 2012, that A.B. had threatened to stab their child with a Halo pencil. Although neither the concerned parent nor the student alleged to have been threatened are identified in plaintiff's second amended complaint, plaintiff's motion practice and his answers to defendants' discovery requests reveal that the parent is Forowycz and the child that A.B. allegedly threatened to stab is Forowycz' son. Critically, Forowycz did not aver[5] or testify that she reported A.B. as a physical threat prior to December 11, 2012. Rather, her affidavit and corresponding deposition testimony establish only that she discussed A.B.'s "inappropriate drawings" with Jordahl and Pakkala, and she voiced concerns to the School regarding Pakkala's management of her classroom, as well as A.B.'s language and drawings.

¶ 88    During her deposition, Forowycz was questioned at length regarding plaintiff's Rule 213(f)(1) disclosure, which identified her as a lay witness and detailed her anticipated trial

---

[5]One of the issues plaintiff identifies on appeal is whether the circuit court erred in striking portions of the counter-affidavits provided by Forowycz and Hooke. We need not evaluate this claim, however, because even if the stricken material is considered, the counter-affidavits do not reveal a genuine issue of material fact.

testimony. Forowycz testified at her deposition that although she "communicated many times with Ann Jordahl and Debra Pakkala about [her] concerns in the classroom, *** [she] did not say that [she] would testify about A.B.'s behavior before December 11th." She continued that her "e-mail was the day after the incident and [she did not] have any recollection *** that [she] did communicate about A.B. before [her] email." She recalled discussing "numerous concerns" with Pakkala between October and December 2012, but she lacked "any recollection about the [Halo] pencil before that was stated in the e-mail." She recalled having a conference with Pakkala prior to December 2012 where A.B.'s drawing was discussed, but she never actually saw the drawing and she "could not recall specific other conversations or emails."

¶ 89      Forowycz also testified that she could not say that she reported to any School employee, prior to December 11, 2012, that A.B was a physical threat to any student, nor could she state that she "complained about A.B. being a physical threat to [her] son in regard to a Halo pencil prior to the incident involving [plaintiff]." Other than her "conference discussions with Miss Pakkala regarding A.B.'s drawings," Forowycz could not recall any other specific conversations or e-mails regarding A.B. prior to the incident. She also could not state why she used the word "reiterate" in her December 12, 2012, e-mail. She could only recall "generalities of the situation," such as that she expressed numerous concerns, parents were "unhappy," "talking to each other," and "sharing information," and that "parents were saying that [A.B.] was drawing inappropriate pictures and made the kids feel uncomfortable," and it was "kind of a known thing." Forowycz also conceded during her testimony that, in May 2022, she sent a text message to Hooke stating:

> "I cannot go on legal record stating what happened because I honestly do not remember. We did not remember the name of the boy. [Forowycz' son] does not remember the situation except that [plaintiff] was injured. If it was closer to the happening,

that may be different. *** I'm uncertain why ten years later I am being asked about the situation."

¶ 90     These statements clearly do not suggest that defendants were on notice of the alleged danger that A.B. posed to other students prior to the incident and, indeed, they eviscerate plaintiff's case because it controverts plaintiff's allegations that, prior to plaintiff's injury, A.B. threatened to stab Forowycz' son with a Halo pencil and that Forowycz notified Jordahl of the threat.

¶ 91     The affidavit prepared by plaintiff's mother, Hooke, likewise does not establish a genuine issue of material fact regarding "what information Defendant School, Jordahl, and Pakkala had in their possession prior to this incident," as plaintiff argues. Plaintiff asserts that Hooke's affidavit stating that she observed a folder containing the "around and around" communications between Forowycz and the School would have created a material and genuine disputed question of fact whether defendants knew or should have known that A.B. was dangerous. Hooke's affidavit does not raise a question of material fact, but instead raises "mere guesswork or speculation," which is insufficient to survive summary judgment. *Kasper*, 2019 IL App (1st) 181204, ¶ 29.

¶ 92     Section 24-24 of the School Code (105 ILCS 5/24-24 (West 2020)) confers on teachers and other educational personnel *in loco parentis* status in all matters relating to the supervision of students in school activities. *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 388-89 (1998). It provides, in pertinent part, that:

> "[T]eachers, other certified educational employees, and any other person, whether
> or not a certificated employee, providing a related service for or with respect to a student
> shall maintain discipline in the schools ***. In all matters relating to the discipline in and
> conduct of the schools and the school children, they stand in the relation of parents and
> guardians to the pupils. This relationship shall extend to all activities connected with the

school program *** and may be exercised at any time for the safety and supervision of the pupils in the absence of their parents or guardians." 105 ILCS 5/24-24 (West 2020). *In loco parentis* status is conferred on teachers, as well as certified and non-certified school personnel, and it applies in both disciplinary and non-disciplinary matters. *Gallarneau v. Calvary Chapel of Lake Villa, Inc.*, 2013 IL App (2d) 120218, ¶ 7. This section has been interpreted to "immunize ordinary negligence, but not to immunize willful and wanton misconduct." *Henrich*, 186 Ill. 2d at 388-89. To impose liability against teachers or other educational employees, a plaintiff must prove willful and wanton misconduct. *Kobylanski v. Chicago Board of Education*, 63 Ill. 2d 165, 167 (1976). "Since a parent is not liable for injuries to his child absent willful and wanton misconduct, section 24-24 makes teachers immune from liability for ordinary negligence." *Courson v. Danville School District No. 118*, 301 Ill. App. 3d 752, 755 (1998). These principles apply to private schools. *Merrill v. Catholic Bishop of Chicago*, 9 Ill. App. 3d 910, 911 (1972).

¶ 93 Simply put, defendants established through the affidavits attached to their motion that they lacked actual knowledge, as well as any reason to anticipate, that A.B. was dangerous or would harm any student, including plaintiff. Neither the counter-affidavits tendered by plaintiff nor any of the deposition testimony, including that of Forowycz and Hooke, controvert the affidavits of Allegretti, Jordahl, and Pakkala. Without such knowledge, plaintiff's claims that defendants acted with willful disregard for plaintiff's safety simply fails.

¶ 94 Moreover, the affidavits attached to defendants' motion and the deposition testimony establishes that the classroom was not unsupervised. Beyers was present in the classroom. Although she did not witness the pencil sail toward and strike plaintiff, she had a direct line of sight on plaintiff and A.B. immediately before plaintiff was injured. Arguendo, even if the classroom was not supervised by any school staff member, that fact, alone, is insufficient to

establish willful and wanton negligence. "[A] teacher's mere act of leaving children unsupervised will not be sufficient to establish willful and wanton misconduct," even if the children are unsupervised for 30 minutes. *Jackson*, 192 Ill. App. 3d at 1100. See *Pomrehn v. Crete-Monee High School District*, 101 Ill. App. 3d 331, 335 (1981) (high school members of the girls' varsity softball team unsupervised for 15 minutes); and *Albers v. Community Consolidated No. 204 School*, 155 Ill. App. 3d 1083, 1086 (1987) (classroom unsupervised for five to ten minutes). Indeed, "[a] teacher cannot be required to watch the students at all times while in school," and school districts and teachers need not provide "constant surveillance of the children." *Mancha v. Field Museum of Natural History*, 5 Ill. App. 3d 699, 702 (1972). Defendants therefore fall within the statutory immunity provisions of section 24-24 of the School Code, and the circuit court's order effectively granting summary judgment in their favor was proper.

¶ 95     In a related argument, plaintiff focuses on count I, which alleged willful and wanton negligence against the school, and argues that the circuit court erred in dismissing this count because the "School Code does not apply to schools, it only applies to teachers." He relies on *Courson*, which he describes as holding that "only teachers, and not schools, stand in the relation of parents to pupils under the *** School Code." In his view, "the logical corollary from *Courson* is that, because the *** School Code does not apply to direct claims against a school, direct claims for negligence and willful and wanton conduct against a school may both withstand an immunity challenge brought on the basis of the *** School Code and the case law interpreting it."

¶ 96     Plaintiff interprets *Courson* too broadly. Contrary to his blanket assertion that the School Code applies to teachers but not to schools, it is well settled that the educational institution, itself, will vicariously benefit from such immunity "if the cause of action is predicated on the ordinary negligence of an employee who has the statutory immunity." *Gallarneau*, 2013 IL App (2d)

120218, ¶ 7. See *Sidwell v. Griggsville Community Unit School District No. 4*, 146 Ill. 2d 467, 472-73 (1992) ("[a]s in any employment situation, school districts vicariously benefit from a teacher's immunity when a cause of action against the school district is predicated on the negligence of a teacher"). Plaintiff's broad assertion that the School Code does not apply to schools is simply inaccurate. *Courson*, itself, recognized that the School Code confers immunity to a school when the complaint alleges that the school is vicariously liable through the acts of its staff. *Courson*, 301 Ill. App. 3d at 755. As our supreme court has made clear, "one must examine the allegations of the complaint to determine whether the immunity under section[] 24-24 *** applies." *Sidwell*, 146 Ill. 2d at 473. This is so because, "[w]hen the complaint alleges the independent negligence of the school district rather than liability through the acts of a teacher, the defendant school district is not entitled to vicarious immunity under section[ ] 24-24." *Id.*

¶ 97 Here, a close examination of the allegations in count I of plaintiff's second amended complaint leads to one inescapable conclusion—All of the allegations concern individual actions taken by educational staff tasked with supervising the school and the students, as opposed to actions taken by the school, as an entity. Plaintiff identified several acts in this count that he argued amounted to willful and wanton negligence by the school. Specifically, he alleged that after "learning of the threat [A.B.] posed to other students," the School failed to take disciplinary action against A.B., failed to "suspend and/or expel" A.B., and failed to speak with his parents. Plaintiff also alleged that the school engaged in willful and wanton negligence when it permitted A.B. to remain in Pakkala's classroom unsupervised, and when it failed to warn teachers, students, and the students' parents that A.B. posed a threat to other students.

¶ 98 The record confirms that all of these actions are under the purview of the executive director of the school. Jordahl testified that she was the school's executive director when plaintiff was

injured. In that role, she was responsible for "overseeing the entire school, staffing, recruiting staff, recruiting students, [and] overseeing everything that happened in the school." She was also responsible for addressing student disciplinary concerns, and "communicating with the teachers and other staff," as well as with the "parents of students," regarding student disciplinary concerns. Plaintiff, in count I, plainly does not allege the independent negligence of the school, but rather, he alleges vicarious liability based on Jordahl's alleged acts or omissions as the executive director. The school is therefore entitled to vicarious immunity vis-à-vis the immunity afforded to Jordahl under the School Code, and the entry of summary judgment on count I was proper.

¶ 99                    D. Denial of Leave to file a Third Amended Complaint

¶ 100   The final issue raised on appeal is whether the circuit court erred in denying plaintiff leave to file a third amended complaint. In Illinois, it is well established that courts are encouraged "to freely and liberally allow the amendment of pleadings." *Lee v. Chicago Transit Authority*, 152 Ill. 2d 431, 467 (1992). The policy favoring liberal amendment of pleadings is reflected in section 616(a) of the Code (735 ILCS 5/2-616(a) (West 2020)), which provides that amendments to pleadings may be allowed at any time before final judgment "on just and reasonable terms."

¶ 101   Despite this liberal policy, the right of a party to amend its pleadings is not absolute and unlimited. *Lee*, 152 Ill. 2d at 467; *Steenes v. MAC Property Management, LLC*, 2014 IL App (1st) 120719, ¶ 38. A trial court has broad discretion to grant or deny a motion to amend, and its decision will not be reversed absent an abuse of discretion. *Lee*, 152 Ill. 2d at 467. In determining whether error occurred, under the abuse-of-discretion standard, the relevant question is whether any reasonable person could have taken the position adopted by the trial court. *In re Marriage of Patel & Sines-Patel*, 2013 IL App (1st) 112571, ¶ 95.

¶ 102   In exercising its discretion in determining whether to allow an amended pleading, the circuit court should consider the four factors that our supreme court has identified: (1) whether the proposed amendment would cure the defective pleading, (2) whether the other party would be prejudiced or surprised by the proposed amendment, (3) whether the proposed amendment is timely,; and (4) whether previous opportunities to amend could be identified. *Loyola Academy*, 146 Ill. 2d at 273.  If the amendment would not have cured a defect in the pleading, the other *Loyola Academy* factors are superfluous. *Watkins v. Office of State Appellate Defender*, 2012 IL App (1st) 111756, ¶ 34.

¶ 103   As noted, plaintiff moved to file a third amended complaint seeking to accomplish two purposes: to (1) add a count pursuant to the Family Expense Act alleging that plaintiff had a right to recover his medical bills incurred as a minor pursuant to an assignment from the Hookes or, in the alternative, add the Hookes as party-plaintiffs so that they could allege a right to recover, under the Family Expense Act, medical bills paid on plaintiff's behalf when he was a minor; and (2) "add back" the ordinary negligence count against the school that plaintiff opted to withdraw approximately one year earlier.

¶ 104   Here, plaintiff's proposed third amended complaint would not have cured a defect in the pleading.  Significantly, plaintiff did not allege any new or additional facts of significance in the proposed third amended complaint that had any bearing on whether defendants knew or should have known prior to plaintiff's injury that A.B. posed a threat to other students.  Rather, plaintiff sought to add new causes of action arising out of largely the same facts as alleged in the second amended complaint.  Defendants challenged plaintiff's factual allegations relating to notice by way of the affidavits attached to their motion to dismiss, and those affidavits remained unrebutted even after plaintiff conducted discovery and presented counter-affidavits.

¶ 105    With respect to the proposed additional causes of action under the Family Expense Act based on an assignment of claims, any recovery of funds that were expended to treat plaintiff's injury "would merely be as an element of damage in the minor's tort action against the one causing the injury which necessitated his subsequent medical treatment." *Cullotta v. Cullotta*, 287 Ill. App. 3d 967, 975 (1997).  Therefore, because we have determined that the circuit court properly entered summary judgment in defendants' favor, and because the proposed third amended complaint added no new facts that would have impacted either the circuit court's analysis or our own, plaintiff's proposed third amended complaint would not have cured any defect.  A parent's claims under the Family Expenses Act "is derivative in nature, as they arise out of the injury" to their child.  *Id.*  As a result, if a defendant is not liable in tort for injuring a child, the defendant cannot be held liable by that child's parent for the payment of medical expenses to treat the child's injury.  *Id*.

¶ 106    Concerning plaintiff's request to "add back" the ordinary negligence count against the school that plaintiff voluntarily withdrew between his initial complaint and his first amended complaint, that addition, too, would not have cured any defect.  Because the school, itself, benefits from Jordahl's vicarious immunity for ordinary negligence under section 24-24 of the School Code, plaintiff's request to add a claim for ordinary negligence against the school necessarily would have failed for the same reason that plaintiff withdrew that claim in the first place.  The circuit court therefore did not abuse its discretion in disallowing any further amendments.

¶ 107                                   III. CONCLUSION

¶ 108    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 109    Affirmed.